FILED
United States Court of Appeals
Tenth Circuit

**January 23, 2012**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MIGUEL GAMES-PEREZ,

Defendant - Appellant.

No. 11-1011

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:10-CR-00263-PAB-1)**

---

John Mosby, Denver, Colorado, Attorney for Appellant.

Ryan T. Bergsieker, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief) for Appellee.

---

Before **GORSUCH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Defendant and appellant Miguel Games-Perez was indicted for possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Claiming that he was unaware that he was actually a felon, Mr. Games-Perez filed a motion in

limine, seeking a pre-trial ruling that the government was required to prove that he actually knew he was a felon. When that motion was denied, Mr. Games-Perez filed a motion to enter a conditional guilty plea under Fed. R. Crim. P. 11(a)(2), asking to reserve the right to appeal the district court's denial of his motion in limine. The district court granted Mr. Games-Perez's motion, pursuant to which he entered a conditional guilty plea. The district court sentenced him to fifty-seven months' imprisonment, followed by three years of supervised release. Mr. Games-Perez appeals his sentence, which we affirm.

## BACKGROUND

On July 24, 2009, Mr. Games-Perez plead guilty to felony attempted robbery in a Colorado state court. In that state court proceeding, Mr. Games-Perez and the state government filed a motion and stipulation for a deferred judgment and sentence, which the state court granted. The state court's order granting the motion and stipulation stated that entry of judgment would be deferred for a two-year period. During that time, Mr. Games-Perez would be supervised by the Colorado Probation Department. Once he had satisfactorily completed his term of probation, he would be allowed to withdraw his guilty plea and the charges against him would be dismissed.

The motion and stipulation contained an express provision that "the Defendant shall not possess any firearms, destructive or dangerous devices or

weapons." R. Vol. 1 at 98. Both Mr. Games-Perez and his attorney signed the motion and stipulation, and Mr. Games-Perez's signature line was directly underneath a sentence stating, "I swear or affirm that I have read and understand this entire document, and every representation I have made is true." Id. at 99.

Mr. Games-Perez simultaneously filed a request to plead guilty. It contained the following language:

> I understand that if the Court accepts my guilty plea to a felony I will stand convicted of a felony. I understand that this felony conviction may be used against me in any future proceedings under the habitual criminal laws. I also understand that my felony conviction may be used against me in any future proceeding concerning my credibility. If I have entered into a Stipulation of a Deferred Judgment and Sentence, and I have not yet completed the terms of that agreement, my guilty plea may be used against me in any future proceeding. I understand if I have entered into a Stipulation of a Deferred Judgment and Sentence and I violate the terms of that agreement, I may stand convicted of a felony and then I will be re-sentenced by the Court.

Id. at 105, ¶ 13. Mr. Games-Perez initialed this paragraph, both Mr. Games-Perez and his attorney signed the request, and Mr. Games-Perez again averred that he had read and understood everything in the document.

In the subsequent plea colloquy, the following exchange took place:

> THE COURT: Are you comfortable with understanding what you are giving up and what the consequences are of this plea so that you want to take this plea today?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Here is what will happen today, if I accept your plea today, hopefully you will leave this courtroom not convicted of

a felony and instead granted the privilege of a deferred judgment, which means you will be supervised by the Department of Probation for a period of two years.

But what I want you to understand is, because you are waiving your right to proceed to a jury trial for all time today, if something goes wrong during this deferred judgment and you don't do what we ask you to do, it is possible that you could be returned into court and at that time you can't ask me to go to a jury trial, do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Because you are giving that up for all time and the likelihood is that you may end up being convicted of this felony even though you don't have a trial. Do you understand that?

THE DEFENDANT: Okay, ma'am.

THE COURT: That also means it is a Class 5 felony if you end up convicted. So it is all up to you. As you can tell what I'm saying, if you end up convicted, the Court could impose a prison term between one and three years in the Department of Corrections with a two-year period of mandatory parole.

Do you understand that that is the worst case scenario and it could happen in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any questions for me about how that works?

THE DEFENDANT: No, ma'am.

THE COURT: Have you spent enough time meeting with your attorneys so that you feel you understand what your options are?

THE DEFENDANT: Yes, ma'am.

THE COURT: Was she able to answer all of your questions to your satisfaction?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with her representation?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you thinking clearly this morning?

THE DEFENDANT: Yes, ma'am.

Tr. of Providence Hearing/Sentencing, R. Vol. 1 at 32-34. After further colloquy, the district court then stated, "All right. Then I accept the plea of guilty. I find it knowing, intelligent and voluntary. I have made written findings consistent with that determination. I am not entering judgment of conviction at this time, hopefully, I never will." Id. at 38.

Finally, the court admonished Mr. Games-Perez to comply with everything required by the deferred judgment documents, and informed him further:

> THE COURT: So please, please, be patient. This is such a really good offer, I would hate to see you throw this away, because eventually, if you come back to this courtroom on July 21, 2011, if you have done everything we have asked you to do, we are going to dismiss this case; but more importantly, you can have this removed from your record. It is a big deal. So please take advantage of it, okay?
>
> THE DEFENDANT: Okay, ma'am.

Id. at 41-42.

On July 27, 2009, following the first meeting between Mr. Games-Perez and his probation officer, Mr. Games-Perez signed two documents. The first was a "Waiver of Extradition as a Condition of Probation," which begins with "I,

-5-

Games-PEREZ, MIGUEL have been convicted of a Felony offense on July 24, 2009[.]" Id. at 116. The second document stipulated the conditions of Mr. Games-Perez's probation, and it stated "You shall not possess any firearm, explosive or other destructive device, or any other dangerous weapon, unless you obtain written permission from the Court." Id. at 119. Mr. Games-Perez put his initials beside this sentence and signed the document.

Less than one year later, on May 9, 2010, Mr. Games-Perez encountered members of the Denver police force when he was walking away from a park in Denver where multiple gunshots had apparently just been fired. When the officers tried to talk to him, he fled. The police caught Mr. Games-Perez, who was holding one hand up in the air while his other hand held, by the barrel, a fully loaded Hi-Point .380 caliber pistol with an obliterated serial number. Mr. Games-Perez was taken into custody.

Upon further investigation, police officers determined that he had been at the park with an individual whose gunshots hit another person. The caliber of the firearm recovered from Mr. Games-Perez did not match the caliber of the rounds found in the wounded individual. This incident led to the felon-in-possession charge at issue in this case.

On May 13, 2010, Mr. Games-Perez made an initial appearance before a magistrate judge. After advising him about the charge filed against him and the maximum penalties possible, the following exchange occurred:

THE COURT: . . . I want to tell you about the charges against you and the rights that you have in this court.

THE DEFENDANT: Yes, ma'am.

THE COURT: You've been charged with one count of possession of a firearm by a previously convicted felon. The penalty on that count is not more than ten years imprisonment, a $250,000 fine, or both, not more than three years' of supervised release, and a $100 special assessment fee.
Do you understand the general nature of the charge against you?

THE DEFENDANT: Not really, ma'am, but . . .

THE COURT: What part don't you understand?

THE DEFENDANT: Like why is like a lot of time with the, you know, the charge? I understand I'm a previous felon.

THE COURT: Yes.

THE DEFENDANT: That goes – like if I get caught with a firearm, that's the minimum I get?

THE COURT: Are you asking about the penalty?

THE DEFENDANT: Yeah.

THE COURT: Yes. Yes, this is the penalty that applies for this charge, which is possession of a firearm by a previously convicted felon. Yes, it's not more than ten years . . . .

R. Vol. 1 at 121-22.

Mr. Games-Perez then filed a motion in limine, as stated above, seeking a pre-trial order that the jury be instructed that the government must prove that he knew he was a felon at the time of the instant offense. He argued that, because of

-7-

the ambiguity in the colloquy with the state court judge regarding his deferred conviction, he did not know he was a convicted felon. Thus, although he acknowledges that our court has expressly held that "the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm," United States v. Capps, 77 F.3d 350, 352 (10th Cir. 1996), he argues his case is distinguishable from Capps and/or Capps was simply wrongly decided.

The district court denied Mr. Games-Perez's motion in limine, stating, "Essentially this case is controlled by Capps. Capps stated quite clearly that the only knowledge required by a Section 922(g) conviction is knowledge that the instrument possessed is a firearm. And moreover, the Court in Capps was quite aware of the [United States v.]Langley[, 62 F.3d 602 (4th Cir. 1995)] decision because the Court in Capps talks about the Langley decision." Tr. of Hr'g on Motions at 18, R. Vol. 1 at 171.[1] This appeal followed, in which Mr. Games-Perez argues the government must prove that he knew he was a convicted felon.

## DISCUSSION

18 U.S.C. § 922(g)(1) provides, in relevant part, as follows:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign

---

[1]Mr. Games-Perez relies heavily on the dissenting and concurring decision in Langley for his argument that § 922(g) requires the government to prove that he knew he was a convicted felon. We discuss Langley further, infra.

commerce, or possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The statute does not include any conviction "which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored. . . ." 18 U.S.C. § 921(a)(20).

In 1986, Congress enacted the Firearms Owners' Protection Act ("FOPA"), Pub. L. 99-308, 100 Stat. 449, which consolidated various laws placing firearm restrictions on felons. While FOPA did not add a scienter or "mens rea" requirement to the operative provisions of the statutory scheme (in this case, § 922(g)(1)), it did modify the related penalty provisions, 18 U.S.C. § 924(a)(2), by adding the word "knowingly." Thus, as modified, § 924(a)(2) now reads, "whoever knowingly violates subsection (a)(6), (d), (g),(i), (j) or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

The question presented in this case, and in others, has been whether the "knowingly" requirement should extend to the element of the statute regarding felony status, so that a § 922(g)(1) conviction will not stand if the defendant does not "know" he is a felon. Put another way, the question is whether the government must prove that the defendant had the requisite scienter or *mens rea* regarding his felony status.

Our circuit has expressly held that "the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." Capps, 77 F.3d at 352 (quoting United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994)); see also, United Sates v. Flower, 29 F.3d 530, 534 (10th Cir. 1994); United States v. Shunk, 881 F.2d 917, 921 (10th Cir. 1989). "Indeed, in setting forth the elements in Shunk, we relied upon United States v. Dancy, 861 F.2d 77, 81 (5th Cir. 1988), where, upon examining the legislative history and statutory predecessors of § 922(g), the Fifth Circuit explicitly held that the government need not prove that the defendant had knowledge that he was a felon." Capps, 77 F.3d at 352. In reaching this conclusion, we expressly relied upon the reasoning of the Fifth Circuit in Dancy and the Fourth Circuit in Langley.

Most other circuits have been in agreement. See, e.g., United States v. Olender, 338 F.3d 629, 637 (6th Cir. 2003); United States v. Miller, 105 F.3d 552, 555 (9th Cir. 1997), overruled on other grds, Caron v. United States, 524 U.S. 308 (1998); United States v. Langley, 62 F.3d 602 (4th Cir. 1995) (en banc); United States v. Smith, 940 F.2d 710, 713 (1st Cir. 1991); United States v. Sherbondy, 865 F.2d 996, 1001 (9th Cir. 1988); Dancy, 861 F.2d 77.

There are, nonetheless, some courts who disagree, and hold a scienter requirement must be fulfilled, and Mr. Games-Perez not surprisingly relies heavily on those authorities. See, e.g., Langley, (Phillips, Senior Circuit Judge, concurring and dissenting); United States v. Matlack, 2010 WL 2682110 (D.

Colo. July 1, 2010) (unpublished); United States v. Kitsch, 2008 WL 2971548 (E.D. Pa. 2008). These courts have made various, and often overlapping, arguments in favor of a scienter requirement. They note, for example, that two Supreme Court decisions, United States v. Staples, 511 U.S. 600 (1994) and United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), require a re-analysis of the issue.

In Staples, the Supreme Court considered whether there is a scienter requirement in 26 U.S.C. § 5861(d), which criminalizes the possession of a "machine gun." The question presented was whether § 5861(d) required the government to prove that the defendant knew that the firearm at issue had the actual characteristics to make it a "machine gun" under the statute. The majority held it did, noting that "offenses which require no *mens rea* are generally disfavored," and that "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a criminal offense." Staples, 511 U.S. at 606.

X-Citement Video, Inc. involved 18 U.S.C. § 2252, which prohibited the sending or receiving of visual depictions of minors engaged in sexually explicit conduct. While the statute included the word "knowingly," the statute, like § 924, arguably placed the word in such a location that it was unclear whether the government had to prove that the defendant knew the pictures were of minors,

rather than adults.  The majority held, by use of traditional presumptions and the dislike of non-*mens rea* statutes, that the government had to do so.

We expressly rejected these same post-Staples and post-X-Citement Video arguments in Capps.  In doing so, we relied upon the majority opinion in Langley, which provided three broad grounds for its view that the two cases required no importation of a scienter requirement into § 922(g)(1) convictions.[2]

Besides the Staples/X-Citement Video arguments, the Langley dissent also engaged in a lengthy analysis of the legislative history of § 922(g) and the traditional presumptions applied in criminal law to support its view that the statute contains a scienter requirement.  The Kitsch court considered the factual

---

[2]The first reason is that "in contrast to an ordinary citizen possessing a firearm unaware of its automatic firing capability or trafficking in sexually explicit materials involving adults, a person convicted of a felony cannot reasonably expect to be free from regulation when possessing a firearm."  Capps, 77 F.3d at 353 (citing Langley).  Second, the statutes at issue in Staples and X-Citement Video:

> did not have long-standing, firmly entrenched, uniform judicial interpretations that necessitated the application of the presumption that "Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction."

Id. (quoting Langley, 62 F.3d at 607-08).  We noted that this fact was in contrast to the statutory predecessors of § 922(g)(1), which "were consistently interpreted not to require proof of defendant's knowledge of . . . felony status."  Id.  Finally, we observed that the arguments in the two Supreme Court cases were of a different nature than those in Capps, in which Capps essentially argued ignorance of the law, which is an ineffective defense.

differences between the different decisions. The <u>Matlack</u> court did not engage in a lengthy analysis, but found its situation distinguishable from that in <u>Capps</u>.

Mr. Games-Perez argues his case is also distinguishable, and therefore not bound by, <u>Capps</u>. While we express no opinion on the views of the <u>Langley</u> dissent (having expressly agreed with the <u>Langley</u> majority in <u>Capps</u>) or the <u>Kitsch</u> or <u>Matlack</u> courts' discussions of the unique facts presented in those cases, we do disagree with Mr. Games-Perez's attempt to distinguish his case from <u>Capps</u>.

He argues that in <u>Capps</u>, the defendant argued a purely legal question –"whether a state's restoration of civil rights nullified [his] known [and] admitted felonies." Appellant's Op. Br. at 9. He claims that he, by contrast, was operating under a mistaken view of the facts, based upon ambiguities he was told by his attorney and the judge at the time of his deferred conviction in state court. We disagree with this view. Mr. Games-Perez was informed repeatedly, both orally and in writing, that he needed to follow all the provisions of his probation if he wished to take advantage of the opportunity to have his felony conviction erased. He was told repeatedly, both orally and in writing, that possession of a firearm was a clear violation of his probation.

So, regardless of whatever else Mr. Games-Perez may have thought, it was pellucidly clear to him that he could not violate his probation, by possessing a firearm, and escape the consequences of his felony conviction. He was expressly

-13-

told those consequences could include affecting a subsequent conviction. He informed the court that he had talked at length to his attorney about the matter, and the court repeatedly asked him about his understanding of the proceedings, to which he assured the court of his understanding. Thus, Mr. Games-Perez knew, as a matter of fact, that he was losing the benefit of his bargain when he picked up a gun while on probation. He just did not know the legal consequences of it–up to ten years in federal prison. That is simply ignorance of the law, which, as in <u>Capps</u>, has never excused disobeyance of a law. <u>Capps</u> directly controls on that matter and binds us to affirm the denial of Mr. Games-Perez's motion in limine.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision.

11-1011, *United States v. Games-Perez*

**GORSUCH, J.,** Circuit Judge, concurring in the judgment.


Our duty to follow precedent sometimes requires us to make mistakes. Unfortunately, this is that sort of case. In *United States v. Capps*, 77 F.3d 350 (10th Cir. 1996), this court considered 18 U.S.C. §§ 922(g) & 924(a) and their collective rule forbidding felons from keeping guns, ultimately holding that "the only knowledge required for a [criminal] conviction is knowledge that the instrument possessed is a firearm." *Id*. at 352-53 (quotation omitted). In the case before us, Mr. Games-Perez concedes he knowingly possessed a firearm but protests that he had no idea he was a convicted felon. In light of *Capps* this is an easy case and we must affirm the conviction because Mr. Games-Perez's protests, whatever their merit, are beside the point. As my colleagues rightly observe, it matters not at all under *Capps* whether Mr. Games-Perez *ever* knew about his felon status. But just because our precedent indubitably commands this result doesn't mean this result is indubitably correct.

The first of *Capps*'s several problems is perhaps the most apparent but least consequential. Should a defendant try to disprove knowledge of his felony status, *Capps* says there is a "vast difference" between a lack of knowledge caused by a mistake of fact and one caused by a mistake of law. *Capps*, 77 F.3d at 353. But trying to distinguish what qualifies as a mistake of fact rather than one of law is a

weary and wasteful business. In describing this mistaken mess, Professor Wayne

LaFave got it just right:

> No area of the substantive criminal law has traditionally been surrounded
> by more confusion than that of ignorance or mistake of fact or law. . . . In
> actuality, the basic rule is extremely simple: ignorance or mistake of fact or
> law is a defense when it negatives the existence of a mental state essential
> to the crime charged. . . . Instead of speaking of ignorance or mistake of
> fact or law as a defense, it would be just as easy to note simply that the
> defendant cannot be convicted when it is shown that he does not have the
> mental state required by law.

1 Wayne LaFave, *Substantive Criminal Law* § 5.6(a), at 394-95 (2d ed. 2003); *see

also* Model Penal Code § 2.04(1). Exactly so. *Either* a mistake "of law" or one

"of fact" can preclude a criminal conviction so long as the mistake negates the

*mens rea* required for the offense in question.

Moving a step closer to the heart of the problem, *Capps*'s walkabout in the

land of mistakes turns out to be needless. After (and before) talking about the

relative importance of a defendant's mistake of law or fact concerning his felony

status, *Capps* unambiguously holds that a defendant's knowledge of his felony

status is inessential to secure a conviction. *Id.* at 352-53. So all its discussion

about a defendant who mistakes his felon status either as a matter of law or fact

isn't just mistaken. It is simply neither here nor there.

And this takes us to the nub of the matter. *Capps*'s holding — that the

government doesn't have to prove a defendant knew he was a felon — simply

can't be squared with the text of the relevant statutes. Section 922(g)(1) makes

unlawful the possession of a gun when three elements are met — (1) the defendant was previously convicted of a felony, (2) the defendant later possessed a firearm, and (3) the possession was in or affecting interstate commerce. But § 922(g) doesn't send anyone to prison for violating its terms. That job is left to § 924(a)(2), which authorizes prison terms for "[w]hoever *knowingly violates*" § 922(g). Despite this, *Capps* reads the word "knowingly" as leapfrogging over the very first § 922(g) element and touching down only at the second. This interpretation defies linguistic sense — and not a little grammatical gravity. Ordinarily, after all, when a "criminal statute . . . introduces the elements of a crime with the word 'knowingly,'" we "apply[] that word to *each element*." *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1891 (2009) (emphasis added).

Neither can I see a way around the problem. To be sure, statutory *mens rea* requirements are not always read to apply to "jurisdictional" elements like the final, interstate commerce element in § 922(g). But, just as surely, that rule of interpretation supplies courts with no license to ignore the applicability of § 924(a)'s *mens rea* requirement to § 922(g)'s first — plainly essential, not merely jurisdictional — element. *See, e.g.*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 & n.3 (1994); *United States v. Prince*, 647 F.3d 1257, 1267-68 (10th Cir. 2011).

Nor is this a case where some other complicating feature of statutory context suggests that § 924(a)'s *mens rea* requirement might apply *only* to the

firearm possession element.  *See Flores-Figueroa*, 129 S. Ct. at 1895 (Alito, J.,

concurring).  This isn't, for example, a situation where "knowingly" begins a long

statutory phrase containing several elements and a reasonable question arises how

far into the thicket the "knowingly" adverbial modifier extends.  If the statute

before us had said "whoever knowingly possesses a firearm after being convicted

of a crime," it *might* be possible to argue that "knowingly" modifies only

"possesses a firearm" and not the later prepositional phrase, "after being

convicted of a crime."  But that's just not the grammar we face here.  Here,

Congress gave us three elements in a particular order.  And it makes no sense to

read the word "knowingly" as so modest that it might blush in the face of the very

first element only to regain its composure and reappear at the second.

To be fair to *Capps*, it rested its holding on the Fourth Circuit's majority

opinion in *United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) (en banc).  So

maybe we should turn there for some answer to *Capps*'s plain language problem.

But doing so only reveals another dead end.  As it turns out, the *Langley* majority

and dissent wage an epic battle not on the field of plain language but

congressional intent.  And their extensive back-and-forth barrages ultimately

serve to illustrate only that the relevant legislative history is stocked with ample

artillery for everyone.  The *Langley* fight is hard fought, each inch of the

historical terrain is heavily contested, but in the end almost no ground is taken by

either side.  Both offer entirely plausible readings of the legislative record.

-4-

Worse still, in the heat and smoke generated in *Langley*'s battle over congressional intent an elemental rule of interpretation gets lost. Whatever Congress's *intent* may have been, any statutory interpretation must take reasonable account of the language Congress *actually adopted*. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal quotation marks omitted). Yet, *Langley* nowhere pauses to explain how it might be possible as a matter of plain language to read "knowingly" as modifying only the second of § 922(g)'s enumerated elements, skipping the first element altogether.

Without any help from *Langley* on our plain language problem, I suppose we might consider trying to rescue *Capps* by resorting to the absurd results doctrine, asking whether some implausible result might follow from (and thus perhaps allow us to overcome) the statute's clear textual direction. *See, e.g.*, *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (discussing absurd results doctrine).

But it's hard to see how that might be the case here. Following the statutory text would simply require the government to prove that the defendant knew of his prior felony conviction. And there's nothing particularly strange about that. After all, there is "a long tradition of widespread lawful gun ownership by private individuals in this country," and the Supreme Court has held

the Second Amendment protects an individual's right to own firearms and may not be infringed lightly. *Staples v. United States*, 511 U.S. 600, 610 (1994); *District of Columbia v. Heller*, 554 U.S. 570 (2008). At the same time, of course, the Court has expressly indicated that laws dispossessing felons are consistent with the Constitution. *Heller*, 554 U.S. at 626; *but see United States v. McCane*, 573 F.3d 1037, 1048-49 (10th Cir. 2009) (Tymkovich, J., concurring) (questioning the Court's analysis on this score). And given all this, it is hardly crazy to think that in a § 922(g)(1) prosecution Congress might require the government to prove that the defendant had knowledge of the *only fact* (his felony status) separating criminal behavior from not just permissible, but constitutionally protected, conduct.

In fact, this result isn't just plausible, it is presumptive. The Supreme Court has long held that courts should "presum[e]" a *mens rea* requirement attaches to "each of the statutory elements that criminalize otherwise innocent conduct," and following this rule the Court has often enforced a *mens rea* requirement even when none appears in the statutory language. *X-Citement Video*, 513 U.S. at 72; *see also Staples*, 511 U.S. at 610-12; *Morissette v. United States*, 342 U.S. 246, 250-53 (1952). How can it be that courts elsewhere read a *mens rea* requirement *into* statutory elements criminalizing otherwise lawful conduct, yet when Congress expressly imposes just such a *mens rea* requirement

-6-

in §§ 922(g) and 924(a) we turn around and read it *out* of the statute?  Here again, *Capps* offers no good explanation for its topsy turvy result.

At the end of all this one might ask if *Capps*'s error makes any difference to the outcome of this particular case.  After all, as the majority notes, there's a certain amount of evidence suggesting that Mr. Games-Perez was aware he had a felony conviction.  But even assuming some sort of harmless error analysis applies to conditional guilty plea appeals like this one, *see United States v. Rivera-Nevarez*, 418 F.3d 1104 (10th Cir. 2005) (majority and dissent discussing this question), there's simply not enough evidence to call the error here harmless.  While it's true that Mr. Games-Perez signed two documents acknowledging he was a felon, the state court explicitly told him otherwise:  "if I accept your plea today, hopefully *you will leave this courtroom not convicted of a felony* and instead granted the privilege of a deferred judgment."  R. Vol. 1 at 32 (emphasis added).  Then, after accepting Mr. Games-Perez's plea, the court returned to and reemphasized the point, adding "*I am not entering judgment of conviction at this time, hopefully, I never will.*"  *Id.* at 38.  Surely in these circumstances a triable question exists whether or not Mr. Games-Perez had the requisite knowledge that his deferred judgment was a felony conviction.

I recognize that precedent compels me to join the court's judgment.  But candor also compels me to suggest that we might be better off applying the law Congress wrote than the one *Capps* hypothesized.  It is a perfectly clear law as it

is written, plain in its terms, straightforward in its application.  Of course, if Congress wishes to revise the plain terms of § 922(g) and § 924(a), it is free to do so anytime.  But there is simply no right or reason for this court to be in that business.