GORSUCH, Circuit Judge,
joined by HOLMES, Circuit Judge, dissenting from the denial of rehearing en banc:
People sit in prison because our circuit’s case law allows the government to put them there without proving a statutorily specified element of the charged crime. Today, this court votes narrowly, 6 to 4, *1117 against revisiting this state of affairs. So Mr. Games-Perez will remain behind bars, without the opportunity to present to a jury his argument that he committed no crime at all under the law of the land. Of course, rehearing en banc is reserved only for questions of exceptional importance. 10th Cir. R. 35.1(A). And I fully appreciate the considered judgment of my colleagues who vote against reconsidering our circuit precedent: after all, it is both longstanding and consistent with the rulings of several other courts. Even so, I respectfully submit this extraordinary situation warrants reconsideration.
Mr. Games-Perez was prosecuted under 18 U.S.C. § 924(a)(2) for “knowingly violat[ing]” § 922(g), a statute that in turn prohibits (1) a convicted felon (2) from possessing a firearm (3) in interstate commerce. But to win a conviction under our governing panel precedent in United States v. Capps, 77 F.3d 350 (10th Cir.1996), the government had to prove only that Mr. Games-Perez knew he possessed a firearm, not that he also knew he was a convicted felon.
For reasons I’ve already explained and won’t belabor in detail here, it is difficult to see how someone might “knowingly violate! ]” § 922(g) without knowing he satisfies all the substantive elements that make his conduct criminal — especially the first substantive element Congress expressly identified. For the reader interested in more on all this, my concurring panel opinion offers it. United States v. Games-Perez, 667 F.3d 1136, 1143-45 (10th Cir.2012) (Gorsueh, J., concurring). For current purposes, just stating Capps’s holding makes the problem clear enough: its interpretation — reading Congress’s mens rea requirement as leapfrogging over the first statutorily specified element and touching down only at the second listed element— defies grammatical gravity and linguistic logic. Ordinarily, after all, when a criminal statute introduces the elements of a crime with the word “knowingly,” that mens rea requirement must be applied “to all the subsequently listed [substantive] elements of the crime.” Flores-Figueroa v. United States, 556 U.S. 646, 650, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009) (emphasis and alteration added).
This court’s failure to hold the government to its congressionally specified burden of proof means Mr. Games-Perez might very well be wrongfully imprisoned. After all, a state court judge repeatedly (if mistakenly) represented to him that the state court deferred judgment on which his current conviction hinges did not constitute a felony conviction. See Games-Perez, 667 F.3d at 1145 (Gorsueh, J., concurring). Given these repeated misstatements from the court itself, Mr. Games-Perez surely has a triable claim he didn’t know his state court deferred judgment amounted to a felony conviction. Yet, because of our precedent in Capps, the government never had to face a trial on this question; it never had to prove its case that Mr. Games-Perez knew of his felon status. It was allowed instead to imprison him without the question even being asked.
There can be fewer graver injustices in a society governed by the rule of law than imprisoning a man without requiring proof of his guilt under the written laws of the land. Yet that is what Capps permits, excusing the government from proving an essential element of the crime Congress recognized. When the case was before the panel, I was bound by Capps and forced by my duty to precedent to countenance its injustice. Now, though, the case is before the en banc court. Here, Capps does not control my vote or require the perpetua *1118 tion of this wrong, and here I believe it should be overruled.
What’s particularly noteworthy at this stage is that the government offers no colorable defense of Capps. After my panel concurrence raised doubts about that precedent’s consistency with the language of §§ 922(g)' and 924(a)(2), Mr. Games-Perez filed a petition for rehearing asking the en banc court to reconsider it. In his petition, Mr. Games-Perez argued that Capps is inconsistent with the statutory language and inconsistent with the proper application of the usual canons of statutory interpretation. Yet even when confronted with all this, the government’s response to the petition for rehearing does not even attempt to defend Capps on the basis of the statutory language at issue. While not dispositive of the statute’s meaning, this glaring omission surely says something, and something not at all good, about the plausibility of our precedent and the appropriateness of Mr. Games-Perez’s conviction.
What’s more, the extra-textual argument the government does press in response to the petition for rehearing hardly fills the void. The government seeks to defend Capps entirely on the basis of a legislative history exegesis found in the Fourth Circuit’s divided decision in United States v. Langley, 62 F.3d 602 (4th Cir.1995) (en banc). According to the government, Langley shows that, although 18 U.S.C. § 922(g)’s predecessor statutes did not contain an explicit mens rea, courts interpreting them required the government to prove that the defendant knew the object he possessed was a firearm — but not that the defendant knew of his felon status. See Langley, 62 F.3d at 604. From this, the government surmises, when Congress added the word “knowingly” to § 924(a), it must have meant only to adopt this judicial gloss and no more.
The problem with all this is that hidden intentions never trump expressed ones. Whatever weight courts may give to judicial interpretations of predecessor statutes when the current statute is ambiguous, those prior interpretations of now defunct statutes carry no weight when the language of the current statute is clear. When the current statute’s language is clear, it must be enforced just as Congress wrote it. See Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (“The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute’s language is plain, the sole function of the courts ... is to enforce it according to its terms.” (quotation marks and citations omitted)); RadLAX Gateway Hotel, LLC v. Amalgamated Bank, — U.S. —, 132 S.Ct. 2065, 2073, 182 L.Ed.2d 967 (2012) (while pre-enactment practice “can be relevant to the interpretation of an ambiguous text” it has no force when the text is clear). And whatever the legislative history may or may not suggest about Congress’s collective “intent” (putting aside the difficulties of trying to say anything definitive about the intent of 535 legislators and the executive, and putting aside as well the Langley dissent’s powerful rejoinders about Congress’s putative intent in this case), the law before us that survived the gauntlet of bicameralism and presentment couldn’t be plainer. By their express terms, §§ 922(g) and 924(a)(2) do not authorize the government to imprison Mr. Games-Perez and people like him unless and until the government can show they knew of their felon status at the time of the alleged offense. The government did not attempt to prove as much here. And that is all we need to know. Congress could have written the law differently than it did, and it is always free to rewrite the law when it wishes. But in our legal order it is the role of the courts to *1119 apply the law as it is written, not some different law Congress might have written in the past or might write in the future.
Besides, even if the government could somehow manage to squeeze an ambiguity out of the plain statutory text before us, it faces another intractable problem. The Supreme Court has long recognized a “presumption” grounded in our common law tradition that a mens rea requirement attaches to “each of the statutory elements that criminalize otherwise innocent conduct.” United States v. X-Citement Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); see also Staples v. United States, 511 U.S. 600, 610-12, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); United States v. U.S. Gypsum Co., 438 U.S. 422, 437-38, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); Morissette v. United States, 342 U.S. 246, 250-53, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Together §§ 922(g) and 924(a)(2) operate to criminalize the possession of any kind of gun. But gun possession is often lawful and sometimes even protected as a matter of constitutional right. The only statutory element separating innocent (even constitutionally protected) gun possession from criminal conduct in §§ 922(g) and 924(a) is a prior felony conviction. So the presumption that the government must prove mens rea here applies with full force. See Staples, 511 U.S. at 613-14, 114 S.Ct. 1793; District of Columbia v. Heller, 554 U.S. 570, 595, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Yet, for its part the government never explains how a much disputed legislative record can overcome this longstanding interpretive presumption.[1]
With all the looming problems facing Capps and the government’s failure to provide any convincing defense of it, the concurrence today seeks to supplement the government’s case with arguments of its own. These arguments are principled and thoughtful and they merit careful consideration. In the end, however, I respectfully submit, none justifies retaining an erroneous precedent and sustaining Mr. Games-Perez’s conviction without holding the government to its statutorily prescribed burden of proof.
First, the concurrence suggests that Langley and United States v. Sherbondy, 865 F.2d 996 (9th Cir.1988), provide Capps and the government with their missing textual analysis. See Concurring Op. at 1113-15. And it’s certainly true that Langley seems to say that the statutes at issue before us are ambiguous, and that this ambiguity justifies its expedition into the legislative history thicket. The difficulty is, Langley never supplies any reason for the claimed ambiguity. The two pages of Langley the concurrence cites (62 F.3d at 604-05) simply note the defendant’s plain language argument, say “[w]e disagree,” and then proceed without fur *1120 ther delay to a study of statutory history. It’s just an implacable fact that Langley— the foundation on which Capps, the government, and all circuit case law in this area rests — contains no meaningful effort to confront the plain meaning of the statutory text at issue before us.[2] And Sherbondy does even less than that to help the government. That case is about another and different problem — whether the defendant, in addition to knowing of the facts and circumstances that made his conduct criminal, must also be aware that federal law criminalizes being a felon in possession. 865 F.2d at 1001-02. On that score the statute might be ambiguous as Sherbondy suggests. But Sherbondy nowhere purports to address (let alone answer) the question whether § 924(a)(2)’s express mens rea requirement applies to a defendant’s felon status.
Second, the concurrence points to the fact that the term “knowingly violates” appears in § 924(a)(2) rather than § 922(g). See Concurring Op. at 1105 n. 1. But the concurrence does not explain how this fact might save Capps. If anything, it does just the opposite, suggesting § 924(a)(2)’s “knowingly” mens rea requirement modifies all the substantive elements of § 922(g) and surely at least its first. After all, how can a person “knowingly violate” the § 922(g) felon-in-possession statute if he doesn’t know he is a felon in possession? See Games-Perez, 667 F.3d at 1145 (Gorsuch, J., concurring). The concurrence points out that an entirely separate provision of § 924 — subsection (e) — punishes those who violate § 922(g) after three prior violent felonies or serious drug offenses, and does so without explicitly imposing any mens rea requirement. Concurring Op. at 1114-15 n. 15. But if this tells us anything about the meaning of § 924(a)(2) — which does contain a mens rea element — the contrasting language only strengthens the case for giving subsection (a)(2) its plain meaning. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (“[Wjhen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.”).[3] In any event, whether or not any mens rea might properly be imposed in § 924(e) cases as a matter of judicial construction is of course an entirely different question for another day. See, e.g., Staples, 511 U.S. at 604-05,114 S.Ct. 1793.
Third, the concurrence insists that, wholly apart from the statutory interpretation question, this case is an inappropriate candidate for en banc review because there’s “a strong and principled reason to doubt Games-Perez’s claimed ignorance of *1121 his status as a felon.” Concurring Op. at 1113. But, respectfully, it is the province of the jury to resolve colorable factual disputes. And as my panel concurrence explains in greater detail, the state trial judge in Mr. Games-Perez’s predicate felony case repeatedly told him that his deferred judgment was not a felony conviction. Games-Perez, 667 F.3d at 1145. The state judge informed Mr. Games-Perez that “if I accept your plea today, hopefully you will leave this courtroom not convicted of a felony.” Id. And after accepting the plea, the state judge said, “I am not entering judgment of conviction at this time, hopefully, I never will.” Id. Given these facts, Mr. Games-Perez undoubtedly has a triable, and quite possibly a winnable, case that he did not know of his felon status. Tellingly, after reviewing the relevant state court materials the able federal district judge in this case acknowledged that Mr. Games-Perez has “an extremely good equitable argument.” R. Vol. I. at 174; see also id. at 159-60. And, tellingly too, the government does not pursue the harmless error argument the concurrence now presses on its behalf.[4]
Fourth, the concurrence raises procedural impediments that, it says, preclude us from reaching the merits of the case. In his petition for rehearing, there’s no dispute that Mr. Games-Perez clearly asks us to overrule Capps. But, the concurrence points out, Mr. Games-Perez never asked the district court to overrule Capps as part of his permitted Rule 11 challenge to his conviction. And that, the concurrence reasons, means he either waived or forfeited the issue.
The first difficulty with this line of reasoning is the fact the government itself has not raised any waiver or forfeiture objec *1122 tion, only the concurrence does on the government’s behalf. And under our precedents, the government’s failure to raise a Rule 11 waiver objection on its own motion is fatal to that argument at least, an objection forgone by its omission. See United States v. Hahn, 359 F.3d 1315, 1328 (10th Cir.2004) (en banc) (per curiam); United States v. White, 584 F.3d 985, 947 n. 5 (10th Cir.2009).[5]
Separately but equally problematically, when it comes to forfeiture there is the fact Mr. Games-Perez very well may be able to satisfy plain error review even if he had to. See Fed.R.Crim.P. 52(b) (courts may correct “plain error ... even though it was not brought to the court’s attention”). After all, and as he has argued to us in his petition for rehearing, the error here is plain on the statute’s face, it affects his substantial rights, and it is difficult to think of many errors reflecting more poorly on our legal system than imprisoning a man without first requiring him to be tried under the terms Congress expressly prescribed.[6]
At the end of the day, if a potential waiver or forfeiture argument of our own *1123 invention is the best reason for not taking this case en banc, and it appears that’s the concurrence’s view, at least everyone is now on notice. On notice that, to avoid seeing their cases gummed up by procedural defenses this court might assert on the government’s behalf, wary defense counsel in future cases should undertake the — otherwise entirely futile — gesture of asking district courts and panels of this court to overrule Capps. All this, of course, ensures the same statutory question sooner or later will find its way back to the very same spot it is in today. And because no district court or panel is authorized to take up the question of overruling Capps, the question won’t be any better briefed, adversarially tested, or more ready for decision than it is in this case. But all this will at least ensure the issue is heard eventually — even if it remains unresolved just long enough so Mr. Games-Perez never receives his statutorily guaranteed day in court.
Fifth, and in a different vein, the concurrence argues this case is unworthy of en banc review because it might result in a circuit split and wind up treating similarly situated individuals differently “based solely on their geographic location.” See Concurring Op. at 1115. But even assuming some circumstance exists in which we might legitimately decline to apply the unambiguous terms of a congressional statute only to avoid disagreement with other circuits — a highly doubtful proposition to begin with — it surely cannot be that someone must go to prison just so we can avoid treating him better than those other circuits have incorrectly allowed to be put away.[7]
*1124 Besides, one can easily risk overstating the state and strength of the case law in this area. The concurrence stresses, repeatedly, the supposed weight and uniformity of case law in this area. See, e.g., Concurring Op. at 1105, 1111-13, 1112 n. 11, 1113-15. But while the Fourth Circuit in Langley rejected Mr. Games-Perez’s argument and some other circuits have more or less simply followed where Langley led, none has paused to address the plain language, structural, and canonical arguments he presses in his petition for rehearing. It’s hard to say, then, that his arguments have yet received their due. In one form or another, his position has, as well, won endorsement from the lengthy en banc dissent in Langley joined by four judges, and from at least two district courts, see United States v. Matlack, No. 09-cr-00531, 2010 WL 2682110 (D.Colo. July 1, 2010); United States v. Kitsch, No. 03-594-01, 2008 WL 2971548 (E.D.Pa. Aug. 1, 2008), and its strength has been acknowledged explicitly or implicitly by at least two other circuits, see United States v. Reyes, 194 Fed.Appx. 69, 70 (2d Cir.2006) (unpublished) (Langley dissent “has some persuasive force”); United States v. Gardner, 488 F.3d 700, 715, n. 2 (6th Cir.2007) (“[Kjnowledge of felony status is arguably an element of the crime in many different species of felon in possession cases.”) (internal quotation marks omitted). Unsurprisingly, too, more than one circuit has taken a plain language approach to the phrase “knowingly violates” when it appears in other statutes, interpreting the term to require “knowledge of facts and attendant circumstances that comprise a violation of the statute.” United States v. Weintraub, 273 F.3d 139, 147 (2d Cir.2001); see also United States v. Lynch, 233 F.3d 1139, 1143 (9th Cir.2000). It’s far from safe to say, then, that what authority that does exist in this area against Mr. Games-Perez is either fully considered or unqualified.
Approaching from a slightly different angle, the concurrence suggests the prudential doctrine of stare decisis should stay our hand. Concurring Op. at 1105, 1115-16 & n. 16. No doubt stare decisis and precedential considerations are most serious ones. As a member of the panel in this case, I was obliged to concur in its judgment because our outcome was settled by an earlier and so binding panel precedent. But it is surely uncontroversial to suggest that the point of the en banc process, the very reason for its existence, is to correct grave errors in panel precedents when they become apparent, even if the panel precedents in question happen to be old or involve questions of statutory or regulatory interpretation. See, e.g., United States v. Aguon, 851 F.2d 1158, 1167 n. 5 (9th Cir.1988) (en banc) (“The province and obligation of the en banc court is to review the current validity of challenged prior decisions.”), overruled on other grounds, Evans v. United States, 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992); Critical Mass Energy Project v. NRC, 975 F.2d 871, 876 (D.C.Cir.1992) (en banc) (en banc court may set aside precedent “if, on reexamination ... it decides that the panel’s holding on an important question of law was fundamentally flawed”).[8] The *1125 concurrence itself acknowledges that “[i]f the case truly were as clear cut as the Dissent paints it to be, it would undoubtedly be appropriate to en banc it even in the face of the potential of creating a circuit split.” Concurring Op. at 1116 n. 16. Plainly, then our disagreement is on the merits, not on the appropriate role of stare decisis. We actually agree that nothing in stare decisis doctrine teaches against rehearing en banc a panel precedent inconsistent with clear statutory directions from Congress.
In the end, I do not for a moment question that the standard for rehearing en banc is a high one or that the arguments one might muster against rehearing are thoughtful or principled. In my judgment, however, none of these arguments compels us to perpetuate the injustice of disregarding the plain terms of the law Congress wrote and denying defendants the day in court that law promises them. To the contrary, this case presents the surely exceptional situation where rehearing is appropriate to “give effect to [Congress’s] plain command, even if doing that will reverse ... longstanding practice.” Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (internal citations omitted). The Supreme Court has told us time and again that “[a]ge is no antidote to clear inconsistency with a statute.” Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 300, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995). And while we must and do always take special care before expressing disagreement with other circuits and reversing our own panel precedents, sometimes these things are done because they must be done. The Supreme Court has not hesitated to give effect to the unambiguous meaning of a congressional command even when all circuits to have addressed the question have failed to abide the statute’s express terms. See, e.g., Lexecon, 523 U.S. at 32, 118 S.Ct. 956; Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Respectfully, I submit, this is a case where we should follow the Court’s lead, enforce the law as Congress wrote it, and grant Mr. Games-Perez the day in court the law guarantees him.

. A recent divided era banc decision from another circuit illustrates the point. See United States v. Burwell, 690 F.3d 500 (D.C.Cir.2012). At issue there was another provision of § 924 that increases the penalty for those who carry a machine gun while committing a crime of violence. That statutory provision includes no express mens rea requirement, but even so three dissenting judges concluded that Staples demanded proof the defendant knew the weapon he carried was a machine gun. Id. at 517-20 (Rogers, J., dissenting); id. at 526-31 (Kavanaugh, J., joined by Tatel, J., dissenting). Even for the majority the critical fact counseling against a mens rea requirement was the fact that the "machine gun” element was not the only distinguishing factor between innocent and criminal conduct. Instead, the government also had to prove the defendant intentionally used or carried a firearm in connection with a violent crime. Id. at 506-07. So it was, for the majority, the absence of a knowledge requirement there didn't risk ensnaring otherwise innocent individuals. The same, of course, cannot be said of the statutory provisions before us.

. In a footnote, the concurrence points to two more pages from Langley and says they contain a “lengthy discussion” of why the statute is ambiguous. See Concurring Op. at 1114 n. 14 (citing Langley, 62 F.3d at 610 — 11) (Phillips, J., concurring and dissenting). But these pages come from the dissent, not the majority. Thus, the majority does not explain why the statute is ambiguous. And the pages in question address an entirely different issue— whether proof that the defendant acted "knowingly” is an essential element of a § 922(g) offense or merely a sentencing factor that must be proved only by a preponderance of the evidence. Indeed, they appear in an entirely distinct section of the dissent addressing that question (Part I.A) while the discussion of the mens rea question now before us appears elsewhere (Part I.B).

. In a footnote, the concurrence asserts that it would be questionable to read § 924(a) as containing a greater mens rea requirement than § 924(e) when the latter provision carries harsher sentences. Concurring Op. at 1114-15 n. 15. But § 924(e) applies to defendants with three or more prior convictions while § 924(a) applies to offenders with just one prior conviction. And it is hardly unusual for the law to treat more harshly those with multiple prior offenses.

. Relatedly, the concurrence says that I have failed to identify "any [other] cases from this court ... involving a credible claim of ignorance of felony status.” See Concurring Op. at 1112. And, admittedly, I have not tried to delve into old case files to identify exactly how many other individuals were denied a triable defense under the law Congress wrote. But it’s evident enough Mr. Games-Perez was — and one such case is one too many. See William Blackstone, 4 Commentaries *358 ("Better that ten guilty persons escape than that one innocent suffer.”).
It is evident enough, as well, that the problem in this case has occurred before and will recur again. Defendants in several other cases in our circuit have unsuccessfully sought to require the government to bear its burden of proving they knew they were felons. See, e.g., Capps, 77 F.3d at 351-53; United States v. Rodriguez, 63 Fed.Appx. 458, 459-60 (10th Cir.2003) (unpublished). While the concurrence suggests that these were cases of "legal" rather than "factual” ignorance, it does not explain why this distinction matters. In fact, and as this court has already explained, a defendant’s mistake of law (here, a mistake about the legal status of a prior conviction) precludes a conviction every bit as much as a mistake of fact where (as here) the mistake of law negates the mental state required for the crime in question. See United States v. Platte, 401 F.3d 1176, 1184 (10th Cir.2005). The concurrence seeks to dismiss Platte's discussion as dicta, see Concurring Op. at 1112-13 n. 12, but offers no rejoinder to quality of its reasoning. See Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5. 1, at 575-76 (1986) (pursuing the same line of reasoning as Platte).
Beyond our own circuit cases we know, too, that when (despite Capps ) a district court recently required the government to prove the defendant’s knowledge of his felon status in yet another case, the government quickly dismissed its prosecution admitting that "due to the Court's ruling, the government cannot proceed with its prosecution at this time.” See Motion to Dismiss Indictment, United States v. Matlack, No. 09-00531 (D.Colo. Sept. 15, 2010). And we know that the issue has arisen many times in other circuits: the concurrence points to these very cases and suggests their dispositions and large numbers add weight to its view. We can, as well, only guess how many more defendants with a triable claim have ended up pleading guilty or forgoing a potentially winning argument at trial or on appeal because erroneous existing precedents like Capps foreclose it.

. In a spirited passage, the concurrence argues for an exception to these precedents. The concurrence contends that it should be allowed to raise a Rule 11 waiver argument for the government because my panel concurrence "reached out” to voice concern that Capps cannot be reconciled with the statute’s plain terms, in the process "ignoring” and posing a ”danger[]” to the "adversarial process that serves as the foundation of our legal system.” Concurring Op. at 1108; see also id. at 10 (calling this "irregular”). But it is entirely consistent with our generally adversarial process and nothing at all irregular for a court to give voice to the plain language of a controlling statute written by Congress even if the parties fail to do so. See United States Nat. Bank of Ore. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 448, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (courts may ”refus[e] to accept what in effect [is] a stipulation on a question of law”); United States v. Charles, 576 F.3d 1060, 1066 (10th Cir.2009) (the parties' positions do "not dictate the meaning of a federal law”). The only thing in this case that might possibly be in tension with our generally adversarial process is the concurrence’s suggestion this court press a waivable objection for the government. After the petition for rehearing expressly asked this court to overrule Capps, the government was unequivocally on notice of the nature of the argument it faced. Yet, in its response brief it did not choose to pursue a Rule 11 objection, and in our generally adversarial process (and under our precedents in Hahn and White) we have no duty to make such an argument for it. The case the concurrence cites extensively in its footnote, Greenlaw v. United States, 554 U.S. 237, 244, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), makes this very point, reversing a court of appeals for raising a waivable argument for the government that the government did not raise for itself. Neither in any event is it clear why we would want to tie ourselves to the mast and press a waivable objection for the government when doing so yields the injustice of denying an individual the day in court promised to him by Congress. Certainly the concurrence’s citation to United States v. Charley, 189 F.3d 1251 (10th Cir.1999), doesn’t do much to recommend (let alone compel) that course. See Concurring Op. at 1107-08. Charley does not even address Rule 11, its waivability, or our longstanding practice of following and enforcing congressional statutes as written even when the parties don’t ask us to.

. The concurrence suggests Richison v. Ernest Group, Inc., 634 F.3d 1123, 1130-31 (10th Cir.2011), and McKissick v. Yuen, 618 F.3d 1177, 1189-90 (10th Cir.2010), preclude us from recognizing even a plain error. See Concurring Op. at 1108-09, 1110-11. They do not. In those civil cases the appellees invoked forfeiture and the appellants didn’t proceed to identify any plain error. Whatever our power to correct plain error may be, we explained we weren’t compelled to develop a plain error argument for the appellants. By contrast, in this criminal case the government has not even raised a forfeiture argument for us or Mr. Games-Perez to address.
The concurrence's self-directed waiver/forfeiture arguments raise other curious questions, too. For example, does a party seeking *1123 to distinguish adverse precedent really waive or forfeit the logically antecedent question whether the precedent itself erroneous? Even if it means an appellate court winds up issuing a precedential opinion that rests on a faulty legal premise? See, e.g., Kamen v. Kemper Fin. Servs., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (suggesting appellate courts "retainf ] the independent power” to decide a logically antecedent question of law on which the challenged lower court judgment rests); Citizens United v. FEC, 558 U.S. 310, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010) (same); United States v. Billups, 536 F.3d 574, 578 (7th Cir.2008) (same in the criminal context); United States v. Guzman-Padilla, 573 F.3d 865, 877 n. 1 (9th Cir.2009) (same). The concurrence's reliance on Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), see Concurring Op. at 1109-10, doesn't answer any of these questions but only invites others. Is distinguishing an adverse precedent really the same as saying nothing at all, as was the case in Johnson? Or might cases like Kamen and Citizens United suggest instead that the mechanism for preserving an objection under Rules 51 and 52 is more expansive than the concurrence would have it? I do not claim answers to these questions, but identify them simply to point out the many difficult issues we would, in fairness, have to confront and surmount if we wanted to carry the government’s waiver and forfeiture arguments on our own backs.

. The concurrence seems to suggest my dissent in Wilson v. Workman, 577 F.3d 1284, 1317 (10th Cir.2009), supports its contrary view. Concurring Op. at 1115-16. Respectfully, my point in Wilson was two-fold and very different: first, that the majority’s decision to split with sister circuits was in error on the merits (the Supreme Court later ruled against our court's position in the split); and, second, that a decision on the issue of federal law in question could have been avoided by the expedient of certifying a predicate question of state law to a state court (an option unavailable here). I did not suggest this court should disregard a clear statutory command in order to avoid a circuit split. Likewise, while the concurrence quotes cases from other circuits counseling against creating a circuit split "absent a strong reason to do so,” Concurring Op. at 1115, inconsistency with an unambiguous statutory direction from Congress surely qualifies as just such a "strong reason.” See, e.g., Zimmerman v. Ore. Dep’t of Justice, 170 F.3d 1169, 1184 (9th Cir.1999) ("Although we are hesitant to create [a circuit split], ... we must follow the unambiguously expressed intent of Congress.”). In *1124 fact, the concurrence itself acknowledges as much. See infra at 1113.

. Our recent practice makes the point plain. We routinely use the en banc process to revisit seriously flawed statutory and regulatory interpretations, even those with some age on them; here are just a few examples from the last few years: United States v. Sturm, 672 F.3d 891 (10th Cir.2012) (reversing interpretation of child pornography statute even though statute no longer operative); Contreras-Bocanegra v. Holder, 678 F.3d 811 (10th Cir.2012) (reversing interpretation of statutory provision allowing deported aliens to re *1125 open their cases); United States v. Payne, 644 F.3d 1111, 1113 n. 2 (10th Cir.2011) (reversing 20 year old interpretation of 28 U.S.C. § 2255); United States v. Bowling, No. 08-6184, 2009 WL 6854970, at *1 n. * (10th Cir. Dec. 23, 2009) (reversing 25 year old precedent on jury instruction in fraud cases); Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868 (10th Cir.2009) (reversing 20 year old precedent .interpreting interstate trucking regulations); In re Mersmann, 505 F.3d 1033 (10th Cir.2007) (overturning prior decision on the res judicata effect of confirmed Chapter 13 bankruptcy plan).