FILED
United States Court of Appeals
Tenth Circuit

September 17, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MIGUEL GAMES-PEREZ,

Defendant - Appellant.

No. 11-1011
(D.Ct. No. 1:10-CR-00263-PAB-1)

**ORDER**

Before **BRISCOE,** Chief Judge, **KELLY, LUCERO, MURPHY, HARTZ, O'BRIEN, TYMKOVICH, GORSUCH, HOLMES,** and **MATHESON**, Circuit Judges.

This matter is before the court on appellant's *Petition for Rehearing En Banc*. We also have a response from the appellee. The en banc request and response were circulated to all the judges of the court who are in regular active service. A poll was called, and a majority of the court declined to grant en banc review. Consequently, the petition request is denied. *See* Fed. R. App. P. 35(a).

Judges Tymkovich, Gorsuch, Holmes, and Matheson would grant the petition for rehearing en banc.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

No. 11-1011, *United States v. Games-Perez*

**MURPHY, J.**, concurring in the denial of rehearing en banc.

I join the order denying en banc review (the "Order"). I write to clarify why it is appropriate to deny Games-Perez's petition for rehearing en banc.

It is only at this very late stage in the proceedings that this case has come to be about whether the plain language of two provisions of the United States Code, 18 U.S.C. §§ 922(g)(1) and 924(a)(2)—which respectively prohibit possession of a firearm by a felon and set out the penalty for that criminal conduct[1]—require for conviction knowledge by a defendant of his status as a felon. The Dissent asserts the answer to this late-arriving question is unquestionably "yes" and the failure of the en banc court to take it up works an obvious injustice. Dissenting Op. at 1. Before the panel, however, Games-Perez never asserted the plain-language argument identified by the Dissent. Instead, after recognizing this court previously held that knowledge of felonious status is not an element of the crime set out in § 922(g)(1), *United States v. Capps*, 77 F.3d

---

[1]Section 922(g)(1), a provision lacking an express mens rea, criminalizes the possession of a firearm by one "convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Section 924(a)(2), the provision setting out penalties for violations of § 922(g)(1), provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than ten years, or both." *Id.* § 924(a)(2). According to the Dissent, Games-Perez was prosecuted under "§ 924(a)(2) for 'knowingly violat[ing]' § 922(g)." Dissenting Op. at 1. In contrast to the Dissent's assertion, the indictment in this case makes no mention of § 924(a)(2). Instead, the indictment makes clear that Games-Perez was charged with violating § 922(g)(1).

350, 352 (10th Cir. 1996), Games-Perez asserted *Capps*, and the cases *Capps* relied on, were not controlling because they involved mistakes of law, while he is asserting a mistake of fact.

The panel majority rejected Games-Perez's arguments and affirmed his conviction. Relying on this court's decision in *Capps*, and noting every circuit court to address the question had reached the same conclusion, the panel majority reaffirmed that knowledge of felonious status is not an element of the crime set out in § 922(g)(1). *United States v. Games-Perez*, 667 F.3d 1136, 1140-42 (10th Cir. 2012); *see also Capps*, 77 F.3d at 352 ("[T]he only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." (quotation omitted)).

In a separate concurring opinion, Judge Gorsuch opined that *Capps* was wrongly decided. *Games-Perez*, 667 F.3d at 1142-43 (Gorsuch, J., concurring). In particular, he asserted "*Capps*'s holding—that the government doesn't have to prove a defendant knew he was a felon—simply can't be squared with the text of the relevant statutes." *Id.* at 1143. *But see Cone v. Bell*, 556 U.S. 449, 482 (2009) ("Appellate courts generally do not reach out to decide issues not raised by the appellant."). Nevertheless, because the panel was bound by the decision in *Capps*, Judge Gorsuch concurred in the judgment. *Id.* at 1142.

Games-Perez thereafter filed the instant petition for rehearing en banc asserting for the very first time that *Capps* was wrongly decided because the plain

-2-

language of § 924(a)(2) unambiguously requires the government to prove knowledge of felonious status to obtain a conviction under § 922(g)(1).[2] *But see United States v. Charley*, 189 F.3d 1251, 1264 n.16 (10th Cir. 1999) ("It is axiomatic that petitions for rehearing are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief." (quotation and alterations omitted)). A majority of this court has now voted to deny rehearing en banc. In response, the Dissent asserts this court's refusal to set aside *Capps* subjects both Games-Perez and criminal defendants generally to a continuing injustice. Dissenting Op. at 1.

\* \* \*

Before addressing the Dissent's assertion of injustice and concomitant claim that the merits of its plain-language argument are undeniably correct, it is necessary to identify substantial procedural impediments to addressing the issue set out in the Dissent. As noted above, the crux of the Dissent is its assertion that, taken together, §§ 922(g)(1) and 924(a)(2) plainly and unambiguously

---

[2]A review of Games-Perez's panel briefs reveals not a single citation to § 924(a)(2), the statutory provision the Dissent relies on in pressing its "plain language" argument. Likewise, Games-Perez's panel briefing never uses the term "plain language," or anything comparable, in asserting the district court erred when it denied his proposed jury instruction. Instead, Games-Perez narrowly limits his arguments to the contention *Capps* did not control his case because he was asserting a mistake of fact and *Capps* involved a mistake of law.

require the government to prove a defendant's awareness of his felonious status to obtain a conviction for violating the terms of § 922(g)(1). Dissenting Op. at 2-6. As recognized by the Dissent, however, the very first time this issue was raised in this case was in the panel concurrence. *Id.* at 3. To be clear, at no point in its filings before the district court did Games-Perez ever assert *Capps* was wrongly decided. Instead, in his motion in limine, he argued only that his case was distinguishable from *Capps* because *Capps* involved a mistake of law and he was asserting a mistake of fact.

Games-Perez affirmatively waived the issue set out in his petition for rehearing when he entered his guilty plea in district court. The record makes clear Games-Perez entered into a conditional guilty plea pursuant to the terms of Fed. R. Crim. P. 11(a)(2). "Although a defendant may not normally appeal his conviction after pleading guilty, '[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.'" *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004). Accordingly, Games-Perez is entitled to raise his belated plain-language argument only if he reserved that issue in his conditional guilty plea. *Id.*

In his motion to enter a conditional guilty plea, Games-Perez indicated as follows: "Defendant by this motion[] seeks to reserve 'in writing' the right to

-4-

have an appellate court review this Court's adverse determination issued on September 10, 2010 (Doc. 39)[, i.e., the district court's] order denying Defendant's Motion in Limine (Doc. 27) filed on August 18, 2010." As recognized by the Dissent, the issue Games-Perez now seeks to bring before the court was not included in Games-Perez's motion in limine. Dissenting Op. at 3 (recognizing that the first time the issue was raised was when it was raised in the panel concurrence).[3] The district court's minute order memorializing the terms of the conditional plea specifically noted that "the issue being reserved for appeal is stated in defendant's motion to enter a conditional plea." Thus, the record makes clear Games-Perez did not preserve the issue upon which he seeks en banc review. Furthermore, because this late- arriving argument is clearly within the scope of the waiver,[4] was the product of a knowing and voluntary guilty plea, and

---

[3]Games-Perez's motion in limine makes absolutely clear he was not in any way challenging the correctness of *Capps*. That motion specifically "incorporates, as if fully set forth herein[,] the argument and reasoning of the [district court] in *Matlack*." Motion in Limine at 4; *see United States v. Matlack*, No. 09-00531, 2010 WL 2682110, at *3 (D. Colo. 2010) (specifically recognizing validity of *Capps*, but asserting it did not address the question whether a mistake of fact could serve as a defense to a § 922(g)(1) weapons charge).

[4]*See United States v. Anderson*, 374 F.3d 955, 957-58 (10th Cir. 2004) (rejecting defendant's argument "that, even though he did not specifically raise his current argument before the District Court, it falls within the scope of his reserved appellate rights because he timely raised a suppression-of- the-evidence claim under a different theory below").

does not result in a miscarriage of justice,[5] summary denial of Games-Perez's en banc petition is appropriate. *Anderson*, 374 F.3d at 957-59, 957.

According to the Dissent, the government is foreclosed from prevailing on this theory because it "has not raised a Rule 11 waiver objection on its own motion." Dissenting Op. at 12. Given the procedural history of this case, the Dissent's suggestion in this regard is surprising. Consistent with the terms of his conditional guilty plea, Games-Perez did not raise before the panel the legal issue now before the en banc court. Nevertheless, the panel concurrence reached out and raised the argument on behalf of Games-Perez. Having been given the green light to ignore the obligations set out in his plea agreement, Games-Perez raised the issue for the very first time in his petition for rehearing. *But see Charley*, 189 F.3d at 1264 n.16 ("It is axiomatic that petitions for rehearing are permitted to enable parties to notify, and to correct, errors of fact or law on the issues already presented; they are not meant to permit parties to assert new grounds for relief." (quotation and alterations omitted)).[6] Now, because the government has not

---

[5]*See Anderson*, 374 F.3d at 959 (narrowly defining miscarriage of justice as including only the following four situations: "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful" (quotation omitted)).

[6]The Dissent never acknowledges the holding in *Charley*, let alone attempts to justify why it is appropriate to disregard that rule and allow Games-Perez to raise the plain-language argument now before the en banc court when he never

(continued...)

asserted a waiver defense in response to an issue raised for the very first time by this court in a panel concurrence, the dissent asserts the government waived the Rule 11 waiver. *But see Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported in the record, even if it requires ruling on arguments not reached by the district court *or even presented to us on appeal*." (emphasis added)). The Dissent's selective disregard of procedural impediments to reaching the merits of Games-Perez's late-arriving, waived, and forfeited plain-language argument, coupled with its refusal to consider alternate procedural avenues for affirming the district court's judgment, perfectly illustrate the dangers of ignoring the adversarial process that serves as the foundation of our legal system.[7]

---

[6](...continued)
raised it before the district court or the panel. Setting aside for the moment the waiver embodied in Games-Perez's conditional plea, the binding nature of *Capps* was no impediment to him preserving the issue. *Cf. United States v. Antonio-Agusta*, 672 F.3d 1209, 1211 n.1 (conceding claim of error failed because panel was bound by existing Tenth Circuit precedent, but preserving for en banc review challenge to correctness of that precedent); *Lowery v. Cnty. of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008) (same); *Brown v. Sirmons*, 515 F.3d 1072, 1091 (10th Cir. 2008) (same); *United States v. VanDam*, 493 F.3d 1194, 1198 n.2 (10th Cir. 2007) (same).

[7]The Dissent asserts there was nothing irregular about the panel concurrence's decision to raise, on behalf of Games-Perez, the argument now at issue before the en banc court. According to the Dissent, "it is entirely consistent with our generally adversarial process and nothing at all irregular for a court to give voice to the plain language of a controlling statute written by Congress even if the parties fail to do so." Dissenting Op. at 12 n.5 (citing *United States Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 448

(continued...)

-7-

Even setting aside the waiver flowing from his guilty plea, another significant procedural impediment precludes this court from granting Games-Perez relief on the issue belatedly raised in his petition for rehearing.  Because Games-Perez never raised before the district court the validity of *Capps* vis-à-vis the plain language of §§ 922(g)(1) and 924(a)(2), the issue is forfeited.  Fed. R. Crim. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 134 (2009) ("If a litigant believes that an error has occurred (to his detriment) during a federal judicial proceeding, he must object in order to preserve the issue.  If he fails to do so in a timely manner, his claim for relief from the error is forfeited.").  To obtain appellate relief on a claim of error forfeited in the district court, an appellant must satisfy the exacting dictates of Rule 52(b) by demonstrating the existence of a "plain error."  *Puckett*, 556 U.S. at 134-35.  "Plain error occurs when there is (1)

[7](...continued)
(1993) and *United States v. Charles*, 576 F.3d 1060, 1066 (10th Cir. 2009)).  The problem with the Dissent's assertion is that neither of these cases address an issue subject to a conditional waiver.  And, more importantly, the Dissent has not cited a single case indicating our obligation to resolve legal disputes empowers this court to disregard the terms of a conditional guilty plea in order to address a legal question the parties did not bring before us.  After all, the very purpose of Rule 11(a)(2) is to preserve prosecutorial and judicial resources by allowing the parties to "identify precisely what pretrial issues have been preserved for appellate review."  Fed. R. Crim. P. 11(a)(2) advisory comm. notes (1983).  Thus, Rule 11(a)(2) contemplates the parties will bring only specified issues to this court, leaving unreviewed other legal disputes settled by the parties as part of the process of negotiating a plea agreement.  The Dissent's novel view of error correction wipes away the issue-specific nature of the Rule 11(a)(2) conditional plea, empowering this court to *sua sponte* redraft the parties' contract.

error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted). Because Games-Perez raised this issue for the first time in his petition for rehearing, he has never even acknowledged the applicability of the plain error doctrine, let alone attempted to satisfy its requirements. *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) ("[Appellant] hasn't even attempted to show how his new legal theory satisfies the plain error standard. And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court."). Given this procedural state of affairs, this case is simply not an appropriate vehicle to now take up the issue addressed at length in the Dissent.

This court has "long said that we may affirm on any basis supported in the record, even if it requires arguments not reached by the district court *or even presented to us on appeal*." *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1200 (10th Cir. 2011) (emphasis added).[8] Thus, it is neither unusual nor unjust for this

---

[8]This court has explained the basis for the differing treatment of appellants and appellees as follows:

Our adversarial system endows the parties with the opportunity—and duty—to craft their own legal theories for relief in the district court.

(continued...)

-9-

court to identify a procedural impediment to reversing the district court's judgment in this case, i.e., Games-Perez has forfeited the issue upon which he seeks en banc review and has not even attempted to satisfy the plain-error requirements. Dissenting Op. at 12 & n.5. Instead, what is highly irregular is for this court to raise an issue sua sponte as a basis for reversing the district court.

---

[8](...continued)
It is the significant but limited job of our appellate system to correct errors made by the district court in assessing the legal theories presented to it, not to serve as a second-shot forum where secondary, back-up theories may be mounted for the first time. Affording plenary appellate review to newly raised legal theories would do much to undermine this adversarial and appellate order. . . .

This reluctance to command do-overs in the district court is also why we treat arguments for affirming the district court differently than arguments for reversing it. We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal. This preference for affirmance no doubt follows from the deference we owe to the district courts and the judgments they reach, many times only after years of involved and expensive proceedings. Because of the cost and risk involved anytime we upset a court's reasoned judgment, we are ready to affirm whenever the record allows it. So it is that appellants must always shoulder a heavy burden—they must come ready both to show the district court's error and, when necessary, to explain why no other grounds can support affirmance of the district court's decision. And this burden is rightfully all the higher when the argument for reversal wasn't even presented to the lower court.

*Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011). *Richison* makes clear appellants like Games-Perez carry a burden of not only rebutting the grounds relied on by a district court in ruling for the appellee, but also a "heavy burden" of rebutting potential grounds for affirmance not actually relied on by the district court. *Richison*, 634 F.3d at 1130.

-10-

*Cone v. Bell*, 556 U.S. 449, 482 (2009) ("Appellate courts generally do not reach out to decide issues not raised by the appellant.").

Games-Perez's forfeiture of this issue is not excused merely because the district court did not have the power to overrule *Capps*. The Supreme Court has specifically rejected the creation of exceptions to the plain language of Rule 52(b). *See Johnson v. United States*, 520 U.S. 461, 465-66 (1997); *see also Richison*, 634 F.3d at 1129 ("[T]he Supreme Court has cautioned us (repeatedly) against creating unwarranted exceptions to plain error review in the criminal context."). *Johnson* involved a prosecution for perjury. *Id.* at 463. Pursuant to then-extant Eleventh Circuit precedent, the district court instructed the jury that the question of materiality was one of law for the court to decide. *Id.* at 464. After Johnson's conviction, but before her appeal to the Eleventh Circuit, the Supreme Court "held that the materiality of a false statement must be submitted to the jury rather than decided by the trial judge." *Id.* (citing *United States v. Gaudin*, 515 U.S. 506 (1995)). Even though a trial objection on the part of Johnson would have most certainly been overruled given existing Eleventh Circuit precedent, the Supreme Court nevertheless applied the Rule 52 plain-error standard specifically because Johnson failed to lodge just such an objection at trial. *Id.* at 465-66. This court has been similarly unwilling to allow appellants to avoid the unambiguous dictates of Rule 52 in situations similar to the present

case.  *Gonzalez-Huerta*, 403 F.3d at 732; *United States v. Schleibaum*, 130 F.3d 947, 949 (10th Cir. 1997).[9]

---

[9]The Dissent suggests there may exist a relaxed standard for the specificity of objections when an objection would be inconsistent with binding circuit precedent.  Dissenting Op. at 13 n.6 ("Does a party seeking to distinguish adverse precedent waive or forfeit the logically antecedent question whether the precedent itself [is] erroneous?").  As set out above, however, *Johnson* specifically rejected the creation of any exceptions to the plain language of Rule 52(b).  *Johnson*, 520 U.S. at 466 ("Even less appropriate than an unwarranted expansion of the Rule would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make."); *see also Jimenez v. Wood Cnty.*, 660 F.3d 841, 846 (5th Cir. 2011) (en banc) ("The language of [the Civil Rules analog to Rule 52(b) involving jury instructions] clearly sets forth the requirements for preserving error and makes no exception for situations where objection would be futile because of controlling precedent.").  Furthermore, none of the Supreme Court cases cited by the Dissent as evidence of this potential relaxed standard involve the Federal Rules.  Instead, those cases involve court-developed rules of appellate waiver.  *See Jimenez*, 660 F.3d at 846 n.8 (rejecting argument nearly identical to the theory advanced by the Dissent).  "Whereas courts are free to carve out exceptions to their own rules of appellate waiver, federal rules of procedure are 'as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard [a] Rule's mandate than they do to disregard constitutional or statutory provisions.'"  *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)).

Likewise, the Dissent errs in suggesting that anytime an appellant attempts to distinguish a precedent from this court, he has preserved for en banc review an attack on the correctness of that precedent.  Dissenting Op. at 13 n.6.  Federal Rule of Criminal Procedure 51 provides that to preserve a claim of error a defendant must specifically inform the district court of the grounds for the objection.  Fed. R. Crim. P. 51(b).  This court's precedents are "clear that an objection must be definite enough to indicate to the district court the precise ground for a party's complaint."  *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) (quotations omitted); *see also United States v. Bass*, 661 F.3d 1299, 1303 (10th Cir. 2011); *United States v. Bedford*, 536 F.3d 1148, 1153 n.4 (10th Cir. 2008); *cf. Richison*, 634 F.3d at 1129-30 (discussing at length injustice of allowing appellants the unfettered right to assert on appeal "legal theories"

(continued...)

The Dissent asserts this court should disregard Games-Perez's forfeiture because it was not raised by the government in its response to the petition for rehearing en banc. Dissenting Op. at 11-12. This court has, however, rejected the notion that an appellant can ignore its own forfeiture in an opening merits brief. *McKissick v. Yuen*, 618 F.3d 1177, 1189-90 (10th Cir. 2010). In *McKissick*, the appellant attempted to raise on appeal an argument not raised before the district court. *Id.* at 1189. This court held her failure to set out the appropriate standard of review and argue her entitlement to relief under that standard doomed her appeal:

> Ms. McKissick's failure to develop her arguments adequately in the district court either forfeited (if her failure was unintentional) or waived (if her failure was intentional) them in that court. Which it is, however, we cannot tell. No doubt, Ms. McKissick would prefer forfeiture, where at least plain error appellate review is possible, rather than waiver where appellate review may be lost altogether. *See United States v. Cruz–Rodriguez*, 570 F.3d 1179, 1183–84 (10th Cir. 2009). But her opening appellate brief neither identifies which standard of review she thinks pertains to her argument nor provides any defense of that standard's application. This despite our longstanding rules requiring parties to identify where in the record they raised the point of error they seek to correct on appeal, 10th Cir. R. 28.2(C)(2), to state what standard of review they think applies to our review of that point of error, Fed. R. App. P. 28(a)(9)(B), and to develop any argument for reversal in their opening appellate brief or risk having it held waived, *see Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007); *Headrick v.*

---

⁹(...continued)
different from those raised in the district court). Thus, the Dissent has offered up no support for its novel futility exception to plain error review.

*Rockwell Int'l Corp.*, 24 F.3d 1272, 1277–78 (10th Cir.1994) (White, J., sitting by designation).

In these circumstances, even if Ms. McKissick's duress arguments were merely forfeited before the district court, her failure to explain in her opening appellate brief why this is so and how they survive the plain error standard waives the arguments in this court. A party cannot count on us to pick out, argue for, and apply a standard of review for it on our own initiative, without the benefit of the adversarial process, and without any opportunity for the adversely affected party to be heard on the question. *See Herrera v. City of Albuquerque*, 589 F.3d 1064, 1075 (10th Cir. 2009); *United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005); *cf. Hill*, 478 F.3d at 1251 (noting that, when left without briefing from the parties, courts "run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process" (internal quotation marks omitted)).

*Id.* at 1189-90 (footnote omitted). As was true in *McKissick*, Games-Perez never set out in his petition for rehearing en banc the appropriate standard of review nor developed an argument for relief under the applicable standard.[10] Nor, according

---

[10]According to the Dissent:

Games-Perez very well may be able to satisfy plain error review if he had to. *See* Fed. R. Crim. P. 52(b) (courts may correct "plain error . . . even though it was not brought to the court's attention"). After all, and as he has argued to us in his petition for rehearing, the error here is plain on the statute's face, it affects his substantial rights, and it is difficult to think of many errors reflecting more poorly on our legal system than imprisoning a man without first requiring him to be tried under the terms Congress expressly prescribed.

Dissenting Op. at 13. *But cf. McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) ("A party cannot count on us to pick out, argue for, and apply a standard of review for it on our own initiative, without the benefit of the adversarial process, and without any opportunity for the adversely affected party to be heard on the

(continued...)

-14-

to *McKissick,* is he excused from doing so by the government's failure to raise the issue here, in its response to the petition for rehearing.  That being the case, no matter the questionable merits of his plain-language argument, he is not entitled to prevail on appeal.

* * *

Even setting the substantial procedural impediments to the side, there are numerous additional considerations counseling against reviewing this case en banc.  To begin, the Dissent's assertion of injustice is not particularly compelling.  In particular, Games-Perez's assertion of ignorance of his felonious status is dubious and the Dissent has failed to demonstrate the question at issue here recurs with any frequency.  Furthermore, the merits of the Dissent's plain-language theory are far from clear.  Additionally, the decision in *Capps* is long-standing, well-entrenched, and, importantly, consistent with the views of every circuit to

---

[10](...continued)
question.").  Although the Dissent's merits assertions in this regard are debatable, what is not debatable is Games-Perez's utter failure to raise and argue an entitlement to relief under the plain error standard.  To be clear, the words "plain," "substantial rights," and "fairness, integrity, or public reputation of judicial proceedings" never appear in Games-Perez's petition for rehearing en banc.  Likewise, there is not a single cite to Rule 52(b) in Games-Perez's petition.  Under such circumstances, it cannot be that the Dissent is suggesting Games-Perez's late-arriving plain-language theory serves the additional role of a plain-error argument

-15-

address the question.  Given all these considerations, this is not the appropriate case to reach out and create a circuit split.

The Dissent begins by asserting in its first sentence: "People sit in prison because our circuit's case law allows the government to put them there without proving a statutorily specified element of the charged crime.  Today this court votes narrowly, 6 to 4, against revisiting this state of affairs."  Dissenting Op. at 1.  The Dissent's tacit assertion of injustice is not convincing.  The assertion of injustice depends entirely on the Dissent's view of the merits.  And, as set out at length below, there is serious reason to doubt the Dissent's assertion that the statutes at issue here are plain and unambiguous on their face.[11]  Furthermore, the record before the court in this case contains no mention of the Dissent's hypothetical prisoners.  Nor does the Dissent cite to any cases from this court involving a credible claim of ignorance of felonious status.  In fact, Games-Perez asserts in his panel briefing that this court has never before faced a credible claim of factual ignorance of felonious status.[12]  Appellant's Reply Brief at 4.  More

_____

[11]It bears repeating that every circuit court to address this question has reached the same result as this court in *Capps*: knowledge of felonious status is not an element of a § 922(g)(1) offense.  *United States v. Games-Perez*, 667 F.3d 1136, 1141-42 (10th Cir. 2012).

[12]In an effort to demonstrate this case is worthy of en banc review, the Dissent asserts the legal question now at issue in this case touches numerous individuals.  Dissenting Op. at 1, 10 n.4.  As the Dissent acknowledges, however, this assertion does not find any support in the record of this case or other cases from this circuit.  *Id.* at 10 n.4 ("[A]dmittedly, I have not tried to delve into old

(continued...)

-16-

case files to identify exactly how many other individuals were denied a triable defense under the law Congress wrote. But it's evident enough Mr. Games-Perez was — and one such case is one too many."); *see also id.* ("[W]e can, as well, only guess how many more defendants with a triable claim have ended up pleading guilty or forgoing a potentially winning argument at trial or on appeal because erroneous existing precedents like *Capps* foreclose it."). The Dissent's highly abstract assertion of universal injustice does little to demonstrate this issue is worthy of en banc review. Fed. R. App. P. 35(a)(2) (providing en banc review is "not favored" and will not be granted unless "the proceeding involves a question of exceptional importance"). That is, the Dissent asks this court to assume that with some regularity individuals are sent to prison despite a credible claim of ignorance of felonious status. A contrary assumption is far more defensible: one can safely assume an individual with a felony conviction will almost always know he is a convicted felon. Absent some credible evidence to the contrary, it is highly unlikely a significant number of individuals, if any, are sent to prison in the face of a credible claim of ignorance of felonious status.

Nor is the Dissent correct in asserting "[d]efendants in several other cases in our circuit have unsuccessfully sought to require the government to bear its burden of proving they knew they were felons." Dissenting Op. at 10 n.4. In support of this assertion, the Dissent cites to *Capps*, *United States v. Rodriguez*, 63 F. App'x 458, 459 (10th Cir. 2003), and *United States v. Matlack*, No. 09-00531 (D. Colo.). As *Capps* makes clear, the defendant in that case did not argue he was unaware of his felonious status. 77 F.3d at 353. Instead, Capps asserted his ignorance of the law, rather than ignorance of his felonious status, excused his violation of § 922(g)(1). *Id.* ("Capps asserts that his reasonable misinterpretation of the effect of state law on his federal conviction negates an element of the offense. However, we have held that whether a prior conviction serves as a predicate under § 922(g)(1) is a question of law. Therefore, his complaint is essentially one of ignorance of the law—'I thought the law applied differently than it does.'"). Thus, rather than asserting the government had to prove he was aware of his felonious status to obtain a conviction, Capps was asserting the government had to prove he was aware it was illegal for him to possess a weapon to obtain a conviction. *Id.* As to *Rodriguez*, the opinion gives absolutely no indication whether the claimed ignorance of felonious status was remotely credible. Finally, the district court decision in *Matlack* specifically recognizes the decision allowing a factual-innocence defense "has limited practical

(continued...)

-17-

fundamentally, there is a strong and principled reason to doubt Games-Perez's claimed ignorance of his status as a felon. The panel majority opinion indicates quite clearly that Games-Perez knew he would lose the benefit of his plea bargain if he were to possess a weapon while on probation for a deferred state felony conviction.[13] *Games-Perez*, 667 F.3d at 1142; *see also id.* at 1145 (Gorsuch, J.,

---

[12](...continued)
applicability" because a legitimate claim of factual innocence will be exceedingly rare. *United States v. Matlack*, No. 09-00531, 2010 WL 2682110, at *3 (D. Colo. July 1, 2010). That being the case, this court is left only with the Dissent's abstract assertion of injustice. That abstraction is simply not sufficient to render this case exceptionally important. Fed. R. App. P. 35(a).

Relying on dicta from this court's decision in *United States v. Platte*, 401 F.3d 1176, 1184 (10th Cir. 2005), the Dissent asserts it matters not that *Capps* involved a mistake of law, because either a mistake of law or of fact can negate the mens rea for the crime in question. Dissenting Op. at 10 n.4. The problem, of course, is that it is far from clear the dicta in *Platte* has any application to the facts of this case. *Cf. United States v. Mains*, 33 F.3d 1222, 1229-30 (10th Cir. 1994) (rejecting argument that ignorance of the law is a defense to possession of a sawed-off shotgun and holding, instead, that "mens rea requires only knowledge of the facts that make conduct illegal; ignorance of the law itself is no defense to criminal prosecution").

[13]As aptly noted in the panel majority opinion:

> [Games-Perez] claims that he . . . was operating under a mistaken view of the facts, based upon ambiguities he was told by his attorney and the judge at the time of his deferred conviction in state court. We disagree with this view. [Games-Perez] was informed repeatedly, both orally and in writing, that he needed to follow all the provisions of his probation if he wished to take advantage of the opportunity to have his felony conviction erased. He was told repeatedly, both orally and in writing, that possession of a firearm was a clear violation of his probation.

(continued...)

-18-

concurring in the judgment) (recognizing the record contained "a certain amount of evidence suggesting that Mr. Games-Perez was aware he had a felony conviction"). All this being the case, it is difficult to take too seriously the Dissent's assertion that the court's denial of en banc review results in a clear and obvious injustice.

More importantly, the resolution of the legal issue presented in the petition for rehearing is simply not as clear as the Dissent suggests. The Dissent asserts that the seminal decision on the question, *United States v. Langley*, 62 F.3d 602 (4th Cir 1995), is unpersuasive because the court never supplies any reason for concluding the insertion of a mens rea into a penalty provision renders the reach of the mens rea requirement ambiguous. Dissenting Op. at 7-8 & n.2. A quick review of *Langley* verifies the contrary is true. The Fourth Circuit unanimously

---

[13](...continued)

> So, regardless of whatever else [Games-Perez] may have thought, it was pellucidly clear to him that he could not violate his probation, by possessing a firearm, and escape the consequences of his felony conviction. He was expressly told those consequences could include affecting a subsequent conviction. He informed the court that he had talked at length to his attorney about the matter, and the court repeatedly asked him about his understanding of the proceedings, to which he assured the court of his understanding. Thus, Mr. Games–Perez knew, as a matter of fact, that he was losing the benefit of his bargain when he picked up a gun while on probation. He just did not know the legal consequences of it—up to ten years in federal prison. That is simply ignorance of the law, which . . . has never excused disobeyance of a law.

*United States v. Games-Perez*, 667 F.3d 1136, 1142 (10th Cir. 2012).

-19-

concluded the statutory scheme was ambiguous based on the insertion of a

scienter requirement into a penalty provision, 18 U.S.C. § 924(a), rather than into

the provision criminalizing the act of possession of a firearm by a convicted

felon, 18 U.S.C. § 922(g)(1). *Langley*, 62 F.3d at 604-05 (stating issue on appeal

was whether insertion of the term "knowingly" in a provision setting penalties for

gun crimes mandated a scienter as to each element of a 922(g)(1) offense); *id.* at

610-11 (Phillips, J., concurring and dissenting) (concluding, after discussing at

length the oddity of inserting a mens rea requirement into a penalty provision,

that it was appropriate to resort to legislative history "because the statutory text is

ambiguous")[14]; *see also United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir.

---

[14]The Dissent asserts that *Langley* "never supplies any *reason* for the claimed ambiguity." Dissenting Op at 7. In so asserting, the Dissent ignores the unanimity of the Fourth Circuit's conclusion that the statutes at issue here are ambiguous and the lengthy discussion in the *Langley* dissent as to why that is true. *Langley*, 62 F.3d at 610-11 (Phillips, J., concurring and dissenting). The Dissent also fails to recognize that the very context of the *Langley* appeal demonstrates the ambiguity: the district court in that case concluded the insertion of the term "knowingly" in § 924(a)(2) did not have any bearing on the mens rea requirement for any substantive offense.

> The district court's . . . holding was based on its reasoning that
> § 924(a) itself does not define any substantive criminal offenses, but
> simply provides penalties for offenses which are defined elsewhere in
> Chapter 44, and that Congress could not have intended its insertion
> of "knowingly" in such a provision to have any bearing on the *mens
> rea* requirements for any substantive offense. Instead, the court
> thought that Congress had intended the "knowingly" language to
> mean only that the specific penalties provided in § 924(a) could be
> imposed upon an individual convicted of a Chapter 44 offense only if
> (continued...)

-20-

1988) ("The FOPA amendments are somewhat confusing. Normally, the mens rea

for a crime is set out as part of the substantive offense, not as part of a penalties

provision . . . .").[15]  Thus, it is simply not accurate to imply the Fourth Circuit

---

[14](...continued)
the government proved—not beyond a reasonable doubt, but under
the lesser preponderance standard applicable to sentencing
factors—that he had committed that offense with a "knowing" state
of mind.  The district court's reading of the statute has some
superficial plausibility, for the *mens rea* elements of a crime are
normally set out in the provisions that define the substantive offense
itself, not in separate penalty provisions.  But this could not have
been what was intended by Congress here.

*Langley*, 62 F.3d at 610 (Phillips, J., concurring and dissenting).  The Dissent
nevertheless asserts this discussion in *Langley* is irrelevant for two reasons: (1) it
comes "from the dissent, not the majority; and (2) it does not address the issue of
ambiguity at all, but instead to whether the "knowingly" language in § 924(a)(2)
is a sentencing factor.  Dissenting Op. at 8 n.2.  The Dissent's first assertion fails
to recognize that the Fourth Circuit **unanimously** concluded the statutory
provisions were ambiguous.  Its second is simply wrong, as the passage quoted
above demonstrates.  It is the very decision to place the mens rea provision in the
penalty provision that creates the ambiguity.

[15]As both *Langley* and *Sherbondy* note, this particular statutory oddity is
further compounded by the presence of 18 U.S.C. § 924(e), which provides
enhanced penalties for certain types of criminal recidivists: "In the case of a
person who violates section 922(g) of this title and has three previous convictions
. . . for a violent felony or a serious drug offense, or both, . . . such person shall
be fined under this title and imprisoned not less than fifteen years . . . ."  It is
important to note that § 924(e), which will apply in some cases to the exclusion of
§ 924(a), does not contain any mens rea provision.  The Dissent asserts the
omission of a mens rea requirement from § 924(e) tells us nothing about the
meaning of § 924(a)(2).  Dissenting Op. at 8-9.  As the Supreme Court has made
clear, however, "individual sections of a single statute should be construed
together." *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).  The absence
of a mens rea in the statutory provision setting out enhanced penalties for the
most serious violations of § 922(g)(1), 18 U.S.C. § 924(e), surely creates some

(continued...)

-21-

ignored the statutory text and turned directly to legislative history in interpreting §§ 922(g)(1) and 924(a)(2).

Nor, for those reasons stated so aptly by the courts in *Langley* and *Sherbondy*, can one confidently declare that the language of §§ 922(g)(1) and 924(a)(2) is so plain in imposing a mens rea requirement as to a defendant's status as a felon that all the other circuits addressing this question were undoubtedly wrong in turning to legislative history to aid interpretation of these statutes. Further, as recognized in the panel concurring opinion, the legislative history is "stocked with ample artillery for everyone." *Games-Perez*, 667 F.3d at 1144 (Gorsuch, J., concurring in the judgment). Thus, the Dissent's assertion that the resolution of the legal issue in this case is so clear and obvious as to be beyond doubt is simply not so.

When coupled with two additional considerations, this lack of clarity as to the merits counsels strongly against en banc review. First and foremost, the circuits have historically been loath to create a split where none exists. *See, e.g.*, *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 979 (8th Cir. 2005) ("[T]he Tenth Circuit's decision . . . is the only decision from a circuit court clearly addressing whether the FMLA mandates strict liability for any

---

[15](...continued) question about the meaning of the mens rea requirement in the provision setting out penalties for the more mundane violations of § 922(g)(1), 18 U.S.C. § 924(a)(2).

interference with an employee's FMLA rights.  By adopting the Tenth Circuit's holding . . . , our decision today avoids a circuit split."); *United States v. Alexander*, 287 F.3d 811, 820 (9th Cir. 2002) ("Absent a strong reason to do so, we will not create a direct conflict with other circuits." (quotation and alteration omitted)); *see also The Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1187 (10th Cir. 2011) (en banc) (Lucero, J., dissenting) (criticizing majority for creating circuit split); *Wilson v. Workman*, 577 F.3d 1284, 1317 (10th Cir. 2009) (en banc) (Gorsuch, J., dissenting) (same).  As noted in the panel majority opinion, every circuit court to address this issue has reached a result consistent with *Capps*.  *Games-Perez*, 667 F.3d at 1141.  The avoidance of unnecessary circuit splits furthers the legitimacy of the judiciary and reduces friction flowing from the application of different rules to similarly situated individuals based solely on their geographic location.

Second, the rule recognized in the panel opinion has been the law in this circuit since 1996, *Capps*, 77 F.3d at 352-53, and has been universally accepted in the circuits for a similar length of time, *Games-Perez*, 667 F.3d at 1141.  That being the case, the distinctive strand of stare decisis applicable to statutory interpretation counsels against altering this court's long-standing construction of the relevant statutes absent compelling circumstances.  *Cf. Hilton v. S.C. Pub. Ry. Comm'n*, 502 U.S. 197, 202 (1991) ("Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of

-23-

constitutional interpretation, the legislative power is implicated, and Congress

remains free to alter what we have done." (quotation omitted)).[16]

Thus, the en banc court is presented with a lengthy list of factors strongly

counseling against en banc review.  The issue now before the en banc court was

not raised before the trial court and is, therefore, forfeited and waived.  Having

---

[16]The Dissent thinks little of these justifications for voting to deny en banc consideration.  Dissenting Op. at 14-18.  In so arguing, however, the Dissent falls back on its insistence the merits of this case are so clear that the refusal to take the case en banc defies the very purpose of en banc review.  *Id.* at 14 ("But even assuming some circumstance exists in which we might legitimately decline to apply the unambiguous terms of a congressional statute only to avoid disagreement with other circuits — a highly doubtful proposition to begin with — it surely cannot be that someone must go to *prison* just so we can avoid treating him better than those other circuits have incorrectly allowed to be put away."); *id.* at 16-17 ("[T]he point of the *en banc* process, the very reason for its existence, is to correct grave errors in panel precedents when they become apparent, even if the panel precedents in question happen to be old or involve questions of statutory or regulatory interpretation.").  The Dissent's assertions in this regard are dubious at best.  Although the Dissent is certain the plain language of §§ 922(g)(1) and 924(a)(2) obligates the government to prove a defendant's awareness of felonious status, every circuit to consider the question has reached a contrary conclusion. Furthermore, if the proper resolution of the issue were as evident as posited by the Dissent, one would think Games-Perez would have raised it before the district court and in his appellate briefs.  *Cf.* Dissenting Op. at 4 (arguing the government's failure to offer up an argument based solely on the plain language of §§ 922(g)(1) and 924(a)(2) "says something, and something not at all good, about the plausibility of our precedent").  If the case truly were as clear cut as the Dissent paints it to be, it would undoubtedly be appropriate to en banc it even in the face of the potential of creating a circuit split.  As noted above, however, the merits are subject to serious debate; this court's precedents are long-standing and firmly entrenched; and the arguments at issue here were raised by the panel concurrence, rather than being raised by Games-Perez.  In these circumstances, consideration of the desire to avoid unnecessary circuit splits and the stabilizing influence of stare decisis is perfectly appropriate.

-24-

raised the issue for the first time in his petition for rehearing en banc, Games-Perez has not even attempted to satisfy the exacting requirements of Rule 52. As the panel majority opinion makes clear, the record indicates Games-Perez was well aware of his felonious status. Likewise, the Dissent has not identified a single case from this circuit, and there apparently is no such case, where an individual was sent to prison in the face of a strong factual case of ignorance of felonious status. Furthermore, Congress has failed or refused to amend the statutes at issue here over a sixteen-year history during which the circuit courts uniformly limited the scienter requirement to knowledge the instrument possessed is a firearm. Finally, Supreme Court certiorari review is available to correct an erroneous statutory interpretation on the part of the circuit courts. Accordingly, this is not a case where the arguments in favor of en banc review overcome the rule that en banc review is "not favored." Fed. R. App. P. 35(a).

11-1011, *United States v. Games-Perez*

**GORSUCH, J.**, joined by **HOLMES, J.**, dissenting from the denial of rehearing en banc:

People sit in prison because our circuit's case law allows the government to put them there without proving a statutorily specified element of the charged crime. Today, this court votes narrowly, 6 to 4, against revisiting this state of affairs. So Mr. Games-Perez will remain behind bars, without the opportunity to present to a jury his argument that he committed no crime at all under the law of the land. Of course, rehearing *en banc* is reserved only for questions of exceptional importance. 10th Cir. R. 35.1(A). And I fully appreciate the considered judgment of my colleagues who vote against reconsidering our circuit precedent: after all, it is both longstanding and consistent with the rulings of several other courts. Even so, I respectfully submit this extraordinary situation warrants reconsideration.

\* \* \*

Mr. Games-Perez was prosecuted under 18 U.S.C. § 924(a)(2) for "knowingly violat[ing]" § 922(g), a statute that in turn prohibits (1) a convicted felon (2) from possessing a firearm (3) in interstate commerce. But to win a conviction under our governing panel precedent in *United States v. Capps*, 77 F.3d 350 (10th Cir. 1996), the government had to prove *only* that Mr. Games-Perez knew he possessed a firearm, *not* that he also knew he was a convicted felon.

For reasons I've already explained and won't belabor in detail here, it is difficult to see how someone might "knowingly violate[]" § 922(g) without knowing he satisfies all the substantive elements that make his conduct criminal — especially the *first* substantive element Congress expressly identified. For the reader interested in more on all this, my concurring panel opinion offers it. *United States v. Games-Perez*, 667 F.3d 1136, 1143-45 (10th Cir. 2012) (Gorsuch, J., concurring). For current purposes, just stating *Capps*'s holding makes the problem clear enough: its interpretation — reading Congress's *mens rea* requirement as leapfrogging over the first statutorily specified element and touching down only at the second listed element — defies grammatical gravity and linguistic logic. Ordinarily, after all, when a criminal statute introduces the elements of a crime with the word "knowingly," that *mens rea* requirement must be applied "to *all* the subsequently listed [substantive] elements of the crime." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) (emphasis and alteration added).

This court's failure to hold the government to its congressionally specified burden of proof means Mr. Games-Perez might very well be wrongfully imprisoned. After all, a state court judge repeatedly (if mistakenly) represented to him that the state court deferred judgment on which his current conviction hinges did *not* constitute a felony conviction. *See Games-Perez*, 667 F.3d at 1145 (Gorsuch, J., concurring). Given these repeated misstatements from the court

itself, Mr. Games-Perez surely has a triable claim he didn't *know* his state court deferred judgment amounted to a felony conviction. Yet, because of our precedent in *Capps*, the government never had to face a trial on this question; it never had to prove its case that Mr. Games-Perez knew of his felon status. It was allowed instead to imprison him without the question even being asked.

There can be fewer graver injustices in a society governed by the rule of law than imprisoning a man without requiring proof of his guilt under the written laws of the land. Yet that is what *Capps* permits, excusing the government from proving an essential element of the crime Congress recognized. When the case was before the panel, I was bound by *Capps* and forced by my duty to precedent to countenance its injustice. Now, though, the case is before the *en banc* court. Here, *Capps* does not control my vote or require the perpetuation of this wrong, and here I believe it should be overruled.

What's particularly noteworthy at this stage is that the government offers no colorable defense of *Capps*. After my panel concurrence raised doubts about that precedent's consistency with the language of §§ 922(g) and 924(a)(2), Mr. Games-Perez filed a petition for rehearing asking the *en banc* court to reconsider it. In his petition, Mr. Games-Perez argued that *Capps* is inconsistent with the statutory language and inconsistent with the proper application of the usual canons of statutory interpretation. Yet even when confronted with all this, the government's response to the petition for rehearing does not even attempt to

-3-

defend *Capps* on the basis of the statutory language at issue. While not dispositive of the statute's meaning, this glaring omission surely says something, and something not at all good, about the plausibility of our precedent and the appropriateness of Mr. Games-Perez's conviction.

What's more, the extra-textual argument the government *does* press in response to the petition for rehearing hardly fills the void. The government seeks to defend *Capps* entirely on the basis of a legislative history exegesis found in the Fourth Circuit's divided decision in *United States v. Langley*, 62 F.3d 602 (4th Cir. 1995) (*en banc*). According to the government, *Langley* shows that, although 18 U.S.C. § 922(g)'s predecessor statutes did not contain an explicit *mens rea*, courts interpreting them required the government to prove that the defendant knew the object he possessed was a firearm — but not that the defendant knew of his felon status. *See Langley*, 62 F.3d at 604. From this, the government surmises, when Congress added the word "knowingly" to § 924(a), it must have meant only to adopt this judicial gloss and no more.

The problem with all this is that hidden intentions never trump expressed ones. Whatever weight courts may give to judicial interpretations of predecessor statutes when the current statute is *ambiguous*, those prior interpretations of now defunct statutes carry no weight when the language of the current statute is *clear*. When the current statute's language is clear, it must be enforced just as Congress wrote it. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("The starting

-4-

point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (quotation marks and citations omitted)); *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012) (while pre-enactment practice "can be relevant to the interpretation of an ambiguous text" it has no force when the text is clear). And whatever the legislative history may or may not suggest about Congress's collective "intent" (putting aside the difficulties of trying to say anything definitive about the intent of 535 legislators and the executive, and putting aside as well the *Langley* dissent's powerful rejoinders about Congress's putative intent in this case), the *law* before us that survived the gauntlet of bicameralism and presentment couldn't be plainer. By their express terms, §§ 922(g) and 924(a)(2) do not authorize the government to imprison Mr. Games-Perez and people like him unless and until the government can show they *knew* of their felon status at the time of the alleged offense. The government did not attempt to prove as much here. And that is all we need to know. Congress could have written the law differently than it did, and it is always free to rewrite the law when it wishes. But in our legal order it is the role of the courts to apply the law as it is written, not some different law Congress might have written in the past or might write in the future.

Besides, even if the government could somehow manage to squeeze an ambiguity out of the plain statutory text before us, it faces another intractable problem. The Supreme Court has long recognized a "presumption" grounded in our common law tradition that a *mens rea* requirement attaches to "each of the statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994); *see also Staples v. United States*, 511 U.S. 600, 610-12 (1994); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437-38 (1978); *Morissette v. United States*, 342 U.S. 246, 250-53 (1952). Together §§ 922(g) and 924(a)(2) operate to criminalize the possession of any kind of gun. But gun possession is often lawful and sometimes even protected as a matter of constitutional right. The *only* statutory element separating innocent (even constitutionally protected) gun possession from criminal conduct in §§ 922(g) and 924(a) is a prior felony conviction. So the presumption that the government must prove *mens rea* here applies with full force. *See Staples*, 511 U.S. at 613-14; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). Yet, for its part the government never explains how a much disputed legislative record can overcome this longstanding interpretive presumption.[1]

-----

[1] A recent divided *en banc* decision from another circuit illustrates the point. *See United States v. Burwell*, --- F.3d ----, No. 06-3070, 2012 WL 3140196 (D.C. Cir. Aug. 3, 2012). At issue there was another provision of § 924 that increases the penalty for those who carry a machine gun while committing a crime of violence. That statutory provision includes no express *mens rea*

(continued...)

-6-

\* \* \*

With all the looming problems facing *Capps* and the government's failure to provide any convincing defense of it, the concurrence today seeks to supplement the government's case with arguments of its own. These arguments are principled and thoughtful and they merit careful consideration. In the end, however, I respectfully submit, none justifies retaining an erroneous precedent and sustaining Mr. Games-Perez's conviction without holding the government to its statutorily prescribed burden of proof.

First, the concurrence suggests that *Langley* and *United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988), provide *Capps* and the government with their missing textual analysis. *See* Concurring Op. at 19-22. And it's certainly true that *Langley* seems to *say* that the statutes at issue before us are ambiguous, and that this ambiguity justifies its expedition into the legislative history thicket. The difficulty is, *Langley* never supplies any *reason* for the claimed ambiguity.

<hr>

[1](...continued)
requirement, but even so three dissenting judges concluded that *Staples* demanded proof the defendant *knew* the weapon he carried was a machine gun. *Id*. at \*16-17 (Rogers, J., dissenting); *id*. at 24-26 (Kavanaugh, J., joined by Tatel, J., dissenting). Even for the majority the critical fact counseling against a *mens rea* requirement was the fact that the "machine gun" element was *not* the only distinguishing factor between innocent and criminal conduct. Instead, the government also had to prove the defendant intentionally used or carried a firearm in connection with a violent crime. *Id*. at \*5. So it was, for the majority, the absence of a knowledge requirement there didn't risk ensnaring otherwise innocent individuals. The same, of course, cannot be said of the statutory provisions before us.

The two pages of *Langley* the concurrence cites (62 F.3d at 604-05) simply note the defendant's plain language argument, say "[w]e disagree," and then proceed without further delay to a study of statutory history. It's just an implacable fact that *Langley* — the foundation on which *Capps*, the government, and all circuit case law in this area rests — contains no meaningful effort to confront the plain meaning of the statutory text at issue before us.[2] And *Sherbondy* does even less than that to help the government. That case is about another and different problem — whether the defendant, in addition to knowing of the facts and circumstances that made his conduct criminal, must *also* be aware that federal law criminalizes being a felon in possession. 865 F.2d at 1001-02. On that score the statute might be ambiguous as *Sherbondy* suggests. But *Sherbondy* nowhere purports to address (let alone answer) the question whether § 924(a)(2)'s express *mens rea* requirement applies to a defendant's felon status.

---

[2] In a footnote, the concurrence points to two more pages from *Langley* and says they contain a "lengthy discussion" of why the statute is ambiguous. *See* Concurring Op. at 20 n.14 (citing *Langley*, 62 F.3d at 610-11) (Phillips, J., concurring and dissenting). But these pages come from the dissent, not the majority. Thus, the majority does not explain why the statute is ambiguous. And the pages in question address an entirely different issue — whether proof that the defendant acted "knowingly" is an essential element of a § 922(g) offense or merely a sentencing factor that must be proved only by a preponderance of the evidence. Indeed, they appear in an entirely distinct section of the dissent addressing that question (Part I.A) while the discussion of the *mens rea* question now before us appears elsewhere (Part I.B).

Second, the concurrence points to the fact that the term "knowingly violates" appears in § 924(a)(2) rather than § 922(g). *See* Concurring Op. at 1 n.1. But the concurrence does not explain how this fact might save *Capps*. If anything, it does just the opposite, suggesting § 924(a)(2)'s "knowingly" *mens rea* requirement modifies *all* the substantive elements of § 922(g) and surely at least its first. After all, how can a person "knowingly violate" the § 922(g) felon-in-possession statute if he doesn't know he is a *felon* in possession? *See Games-Perez*, 667 F.3d at 1145 (Gorsuch, J., concurring). The concurrence points out that an entirely separate provision of § 924 — subsection (e) — punishes those who violate § 922(g) after three prior violent felonies or serious drug offenses, and does so without explicitly imposing any *mens rea* requirement. Concurring Op. at 21 n.15. But if this tells us anything about the meaning of § 924(a)(2) — which *does* contain a *mens rea* element — the contrasting language only strengthens the case for giving subsection (a)(2) its plain meaning. *See Sosa v. Alvarez–Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").[3] In any event, whether or not

---

[3] In a footnote, the concurrence asserts that it would be questionable to read § 924(a) as containing a greater *mens rea* requirement than § 924(e) when the latter provision carries harsher sentences. Concurring Op. at 21-22 n.15. But § 924(e) applies to defendants with three or more prior convictions while § 924(a) applies to offenders with just one prior conviction. And it is hardly unusual for

(continued...)

any *mens rea* might properly be imposed in § 924(e) cases as a matter of judicial construction is of course an entirely different question for another day. *See, e.g.*, *Staples*, 511 U.S. at 604-05.

Third, the concurrence insists that, wholly apart from the statutory interpretation question, this case is an inappropriate candidate for *en banc* review because there's "a strong and principled reason to doubt Games-Perez's claimed ignorance of his status as a felon." Concurring Op. at 18. But, respectfully, it is the province of the jury to resolve colorable factual disputes. And as my panel concurrence explains in greater detail, the state trial judge in Mr. Games-Perez's predicate felony case repeatedly told him that his deferred judgment was *not* a felony conviction. *Games-Perez*, 667 F.3d at 1145. The state judge informed Mr. Games-Perez that "if I accept your plea today, hopefully you will leave this courtroom not convicted of a felony." *Id*. And after accepting the plea, the state judge said, "I am not entering judgment of conviction at this time, hopefully, I never will." *Id*. Given these facts, Mr. Games-Perez undoubtedly has a triable, and quite possibly a winnable, case that he did not know of his felon status. Tellingly, after reviewing the relevant state court materials the able federal district judge in this case acknowledged that Mr. Games-Perez has "an extremely good equitable argument." R. Vol. I. at 174; *see also id.* at 159-60. And,

---

[3](...continued)
the law to treat more harshly those with multiple prior offenses.

tellingly too, the government does not pursue the harmless error argument the

concurrence now presses on its behalf.[4]

---

   [4] Relatedly, the concurrence says that I have failed to identify "any [other] cases from this court . . . involving a credible claim of ignorance of felony status." *See* Concurring Op. at 16.  And, admittedly, I have not tried to delve into old case files to identify exactly how many other individuals were denied a triable defense under the law Congress wrote.  But it's evident enough Mr. Games-Perez was — and one such case is one too many.  *See* William Blackstone, 4 Commentaries *358 ("Better that ten guilty persons escape than that one innocent suffer.").

   It is evident enough, as well, that the problem in this case has occurred before and will recur again.  Defendants in several other cases in our circuit have unsuccessfully sought to require the government to bear its burden of proving they knew they were felons.  *See, e.g., Capps*, 77 F.3d at 351-53; *United States v. Rodriguez*, 63 F. App'x. 458, 459-60 (10th Cir. 2003) (unpublished).  While the concurrence suggests that these were cases of "legal" rather than "factual" ignorance, it does not explain why this distinction matters.  In fact, and as this court has already explained, a defendant's mistake of law (here, a mistake about the legal status of a prior conviction) precludes a conviction every bit as much as a mistake of fact where (as here) the mistake of law negates the mental state required for the crime in question.  *See United States v. Platte,* 401 F.3d 1176, 1184 (10th Cir. 2005).  The concurrence seeks to dismiss *Platte*'s discussion as dicta, *see* Concurring Op. at 18 n.12, but offers no rejoinder to quality of its reasoning.  *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.1, at 575-76 (1986) (pursuing the same line of reasoning as *Platte*).

   Beyond our own circuit cases we know, too, that when (despite *Capps*) a district court recently required the government to prove the defendant's knowledge of his felon status in yet another case, the government quickly dismissed its prosecution admitting that "due to the Court's ruling, the government cannot proceed with its prosecution at this time."  *See* Motion to Dismiss Indictment, *United States v. Matlack*, No. 09-00531 (D. Colo. Sept. 15, 2010).  And we know that the issue has arisen many times in other circuits:  the concurrence points to these very cases and suggests their dispositions and large numbers add weight to its view.  We can, as well, only guess how many more defendants with a triable claim have ended up pleading guilty or forgoing a

(continued...)

-11-

Fourth, the concurrence raises procedural impediments that, it says,

preclude us from reaching the merits of the case. In his petition for rehearing,

there's no dispute that Mr. Games-Perez clearly asks us to overrule *Capps*. But,

the concurrence points out, Mr. Games-Perez never asked the district court to

overrule *Capps* as part of his permitted Rule 11 challenge to his conviction. And

that, the concurrence reasons, means he either waived or forfeited the issue.

The first difficulty with this line of reasoning is the fact the government

itself has not raised any waiver or forfeiture objection, only the concurrence does

on the government's behalf. And under our precedents, the government's failure

to raise a Rule 11 waiver objection on its own motion is fatal to that argument at

least, an objection forgone by its omission. *See United States v. Hahn*, 359 F.3d

1315, 1328 (10th. Cir. 2004) (*en banc*) (per curiam); *United States v. White*, 584

F.3d 935, 947 n.5 (10th Cir. 2009).[5]

---

[4](...continued)
potentially winning argument at trial or on appeal because erroneous existing
precedents like *Capps* foreclose it.

[5] In a spirited passage, the concurrence argues for an exception to these
precedents. The concurrence contends that it should be allowed to raise a Rule 11
waiver argument for the government because my panel concurrence "reached out"
to voice concern that *Capps* cannot be reconciled with the statute's plain terms, in
the process "ignoring" and posing a "danger[]" to the "adversarial process that
serves as the foundation of our legal system." Concurring Op. at 6-7; *see also id.*
at 10 (calling this "irregular"). But it is entirely consistent with our generally
adversarial process and nothing at all irregular for a court to give voice to the
plain language of a controlling statute written by Congress even if the parties fail
to do so. *See United States Nat. Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*,
(continued...)

-12-

Separately but equally problematically, when it comes to forfeiture there is the fact Mr. Games-Perez very well may be able to satisfy plain error review even if he had to. *See* Fed. R. Crim. P. 52(b) (courts may correct "plain error . . . even though it was not brought to the court's attention"). After all, and as he has argued to us in his petition for rehearing, the error here is plain on the statute's face, it affects his substantial rights, and it is difficult to think of many errors reflecting more poorly on our legal system than imprisoning a man without first requiring him to be tried under the terms Congress expressly prescribed.[6]

_____

[5](...continued)
508 U.S. 439, 448 (1993) (courts may "refus[e] to accept what in effect [is] a stipulation on a question of law"); *United States v. Charles*, 576 F.3d 1060, 1066 (10th Cir. 2009) (the parties' positions do "not dictate the meaning of a federal law"). The only thing in this case that might possibly be in tension with our generally adversarial process is the concurrence's suggestion this court press a waivable objection for the government. After the petition for rehearing expressly asked this court to overrule *Capps*, the government was unequivocally on notice of the nature of the argument it faced. Yet, in its response brief it did not choose to pursue a Rule 11 objection, and in our generally adversarial process (and under our precedents in *Hahn* and *White*) we have no duty to make such an argument for it. The case the concurrence cites extensively in its footnote, *Greenlaw v. United States*, 554 U.S. 237, 244 (2008), makes this very point, reversing a court of appeals for raising a waivable argument for the government that the government did not raise for itself. Neither in any event is it clear why we would *want* to tie ourselves to the mast and press a waivable objection for the government when doing so yields the injustice of denying an individual the day in court promised to him by Congress. Certainly the concurrence's citation to *United States v. Charley,* 189 F.3d 1251 (10th Cir. 1999), doesn't do much to recommend (let alone compel) that course. *See* Concurring Op. at 6-7. *Charley* does not even address Rule 11, its waivability, or our longstanding practice of following and enforcing congressional statutes as written even when the parties don't ask us to.

[6] The concurrence suggests *Richison v. Ernest Group, Inc.*, 634 F.3d 1123,
(continued...)

-13-

At the end of the day, if a potential waiver or forfeiture argument of our

own invention is the best reason for not taking this case *en banc*, and it appears

that's the concurrence's view, at least everyone is now on notice. On notice that,

to avoid seeing their cases gummed up by procedural defenses this court might

assert on the government's behalf, wary defense counsel in future cases should

---

[6](...continued)
1130-31 (10th Cir. 2011), and *McKissick v. Yuen*, 618 F.3d 1177, 1189-90 (10th Cir. 2010), preclude us from recognizing even a plain error. *See* Concurring Op. at 9-10, 13-14. They do not. In those civil cases the appellees invoked forfeiture and the appellants didn't proceed to identify any plain error. Whatever our power to correct plain error may be, we explained we weren't compelled to develop a plain error argument for the appellants. By contrast, in this criminal case the government has not even raised a forfeiture argument for us or Mr. Games-Perez to address.

The concurrence's self-directed waiver/forfeiture arguments raise other curious questions, too. For example, does a party seeking to distinguish adverse precedent really waive or forfeit the logically antecedent question whether the precedent itself erroneous? Even if it means an appellate court winds up issuing a precedential opinion that rests on a faulty legal premise? *See, e.g., Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) (suggesting appellate courts "retain[] the independent power" to decide a logically antecedent question of law on which the challenged lower court judgment rests); *Citizens United v. FEC*, 130 S. Ct. 876, 893 (2010) (same); *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008) (same in the criminal context); *United States v. Guzman-Padilla*, 573 F.3d 865, 877 n.1 (9th Cir. 2009) (same). The concurrence's reliance on *Johnson v. United States*, 520 U.S. 461 (1997), *see* Concurring Op. at 11-12, doesn't answer any of these questions but only invites others. Is distinguishing an adverse precedent really the same as saying nothing at all, as was the case in *Johnson*? Or might cases like *Kamen* and *Citizens United* suggest instead that the mechanism for preserving an objection under Rules 51 and 52 is more expansive than the concurrence would have it? I do not claim answers to these questions, but identify them simply to point out the many difficult issues we would, in fairness, have to confront and surmount if we wanted to carry the government's waiver and forfeiture arguments on our own backs.

-14-

undertake the — otherwise entirely futile — gesture of asking district courts and panels of this court to overrule *Capps*. All this, of course, ensures the same statutory question sooner or later will find its way back to the very same spot it is in today. And because no district court or panel is authorized to take up the question of overruling *Capps*, the question won't be any better briefed, adversarially tested, or more ready for decision than it is in this case. But all this will at least ensure the issue is heard eventually — even if it remains unresolved just long enough so Mr. Games-Perez never receives his statutorily guaranteed day in court.

Fifth, and in a different vein, the concurrence argues this case is unworthy of *en banc* review because it might result in a circuit split and wind up treating similarly situated individuals differently "based solely on their geographic location." *See* Concurring Op. at 23. But even assuming some circumstance exists in which we might legitimately decline to apply the unambiguous terms of a congressional statute only to avoid disagreement with other circuits — a highly doubtful proposition to begin with — it surely cannot be that someone must go to *prison* just so we can avoid treating him better than those other circuits have incorrectly allowed to be put away.[7]

---

[7] The concurrence seems to suggest my dissent in *Wilson v. Workman*, 577 F.3d 1284, 1317 (10th Cir. 2009), supports its contrary view. Concurring Op. at 23. Respectfully, my point in *Wilson* was two-fold and very different: first, that

(continued...)

-15-

Besides, one can easily risk overstating the state and strength of the case law in this area. The concurrence stresses, repeatedly, the supposed weight and uniformity of case law in this area. *See, e.g.,* Concurring Op. at 2, 15-16, 16 n.11, 19-22. But while the Fourth Circuit in *Langley* rejected Mr. Games-Perez's argument and some other circuits have more or less simply followed where *Langley* led, none has paused to address the plain language, structural, and canonical arguments he presses in his petition for rehearing. It's hard to say, then, that his arguments have yet received their due. In one form or another, his position has, as well, won endorsement from the lengthy *en banc* dissent in *Langley* joined by four judges, and from at least two district courts, *see United States v. Matlack*, No. 09-cr-00531, 2010 WL 2682110 (D. Colo. July 1, 2010); *United States v. Kitsch*, No. 03-594-01 2008 WL 2971548 (E.D. Pa. Aug. 1, 2008), and its strength has been acknowledged explicitly or implicitly by at least

---

[7](...continued)
the majority's decision to split with sister circuits was *in error on the merits* (the Supreme Court later ruled against our court's position in the split); and, second, that a decision on the issue of federal law in question could have been avoided by the expedient of certifying a predicate question of state law to a state court (an option unavailable here). I did not suggest this court should disregard a clear statutory command in order to avoid a circuit split. Likewise, while the concurrence quotes cases from other circuits counseling against creating a circuit split "absent a strong reason to do so," Concurring Op. at 23, inconsistency with an unambiguous statutory direction from Congress surely qualifies as just such a "strong reason." *See, e.g.*, *Zimmerman v. Ore. Dep't of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999) ("Although we are hesitant to create [a circuit split], . . . we must follow the unambiguously expressed intent of Congress."). In fact, the concurrence itself acknowledges as much. *See infra* at 18.

-16-

two other circuits, *see United States v. Reyes,* 194 F. App'x 69, 70 (2d Cir. 2006) (unpublished) (*Langley* dissent "has some persuasive force"); *United States v. Gardner*, 488 F.3d 700, 715, n.2 (6th Cir. 2007) ("[K]nowledge of felony status is arguably an element of the crime in many different species of felon in possession cases.") (internal quotation marks omitted).  Unsurprisingly, too, more than one circuit has taken a plain language approach to the phrase "knowingly violates" when it appears in other statutes, interpreting the term to require "knowledge of facts and attendant circumstances that comprise a violation of the statute." *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001); *see also United States v. Lynch*, 233 F.3d 1139, 1143 (9th Cir. 2000).  It's far from safe to say, then, that what authority that does exist in this area against Mr. Games-Perez is either fully considered or unqualified.

Approaching from a slightly different angle, the concurrence suggests the prudential doctrine of *stare decisis* should stay our hand.  Concurring Op. at 2, 23-24 & n.16.  No doubt *stare decisis* and precedential considerations are most serious ones.  As a member of the panel in this case, I was obliged to concur in its judgment because our outcome was settled by an earlier and so binding panel precedent.  But it is surely uncontroversial to suggest that the point of the *en banc* process, the very reason for its existence, is to correct grave errors in panel precedents when they become apparent, even if the panel precedents in question happen to be old or involve questions of statutory or regulatory interpretation.

-17-

*See, e.g., United States v. Aguon*, 851 F.2d 1158, 1167 n.5 (9th Cir. 1988) (*en banc*) ("The province and obligation of the *en banc* court is to review the current validity of challenged prior decisions."), overruled on other grounds, *Evans v. United States*, 504 U.S. 255 (1992); *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 876 (D.C. Cir. 1992) (*en banc*) (*en banc* court may set aside precedent "if, on reexamination . . . it decides that the panel's holding on an important question of law was fundamentally flawed").[8]  The concurrence itself acknowledges that "[i]f the case truly were as clear cut as the Dissent paints it to be, it would undoubtedly be appropriate to en banc it even in the face of the potential of creating a circuit split."  Concurring Op. at 24 n.16.  Plainly, then our disagreement is on the merit*s*, *not* on the appropriate role of *stare decisis*.  We

---

[8]  Our recent practice makes the point plain.  We routinely use the *en banc* process to revisit seriously flawed statutory and regulatory interpretations, even those with some age on them; here are just a few examples from the last few years:  *United States v. Sturm*, 672 F.3d 891 (10th Cir. 2012) (reversing interpretation of child pornography statute even though statute no longer operative); *Contreras-Bocanegra v. Holder*, 678 F.3d 811 (10th Cir. 2012) (reversing interpretation of statutory provision allowing deported aliens to reopen their cases); *United States v. Payne*, 644 F.3d 1111, 1113 n.2 (10th Cir. 2011) (reversing 20 year old interpretation of 28 U.S.C. § 2255); *United States v. Bowling*, No. 08-6184, 2009 WL 6854970, at *1 n.* (10th Cir. Dec. 23, 2009) (reversing 25 year old precedent on jury instruction in fraud cases); *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009) (reversing 20 year old precedent interpreting interstate trucking regulations); *In re Mersmann*, 505 F.3d 1033 (10th Cir. 2007) (overturning prior decision on the res judicata effect of confirmed Chapter 13 bankruptcy plan).

actually *agree* that nothing in *stare decisis* doctrine teaches against rehearing *en banc* a panel precedent inconsistent with clear statutory directions from Congress.

\* \* \*

In the end, I do not for a moment question that the standard for rehearing *en banc* is a high one or that the arguments one might muster against rehearing are thoughtful or principled.  In my judgment, however, none of these arguments compels us to perpetuate the injustice of disregarding the plain terms of the law Congress wrote and denying defendants the day in court that law promises them.  To the contrary, this case presents the surely exceptional situation where rehearing is appropriate to "give effect to [Congress's] plain command, even if doing that will reverse . . . longstanding practice." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (internal citations omitted).  The Supreme Court has told us time and again that "[a]ge is no antidote to clear inconsistency with a statute." *Metropolitan Stevedore Co. v. Rambo*, 515 U.S. 291, 300 (1995).  And while we must and do always take special care before expressing disagreement with other circuits and reversing our own panel precedents, sometimes these things are done because they must be done.  The Supreme Court has not hesitated to give effect to the unambiguous meaning of a congressional command even when all circuits to have addressed the question have failed to abide the statute's express terms.  *See, e.g.*, *Lexecon*, 523 U.S. at 32; *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511

-19-

U.S. 164, 177 (1994).  Respectfully, I submit, this is a case where we should follow the Court's lead, enforce the law as Congress wrote it, and grant Mr. Games-Perez the day in court the law guarantees him.